

## AMENDMENT

This Amendment is made as of September 1, 2009 (Effective Date) between Aetna Health Inc., a Texas corporation, on behalf of itself and its Affiliates (hereinafter referred to as "Company") and Methodist Hospitals of Dallas d/b/a MDMC, MCMC, MMMC, and MRH And MHSR Medical Center d/b/a MRMC (hereinafter referred to as "Hospital").

WHEREAS, the parties have entered into a Managed Care Agreement ("Agreement") to provide health care services to Members;

WHEREAS, the parties previously amended the Agreement to add Methodist Richardson Medical Center ("MRMC") to this Agreement and agreed to allow the compensation terms then in effect for MRMC to remain effect; and

WHEREAS, the parties have negotiated new compensation terms for MRMC which effectively transitions the compensation terms for MRMC from the existing compensation terms and rates to the same compensation terms and rates for all other Methodist of Dallas hospitals, effective April 1, 2010; and

WHEREAS, the parties have mutually agreed to reduce the percent of charge reimbursement for all hospital locations other than MRMC covered by the Agreement by [         ]); and

WHEREAS, the parties have agreed to revise Section 3.1 Payment and Section 3.4 Company's Obligation to Pay to reflect current requirements and practices and to specifically include an obligation by the parties to manage the percentage of Hospital's claims that remain outstanding beyond sixty (60) days; and

WHEREAS, the parties have agreed to incorporate into the Agreement obligations for the reporting and handling of Never Events/Serious Reportable Errors; and

WHEREAS, the parties wish to amend the Agreement to revise the Hospital's legal name to Methodist Hospitals of Dallas d/b/a MDMC, MCMC, MMMC, And MHS-CHC I LP d/b/a Methodist Rehabilitation Hospital And MHSR Medical Center d/b/a MRMC.

NOW, THEREFORE, in consideration of the mutual promises and undertakings contained herein, the parties agree to be legally bound as follows:

1. All Previous Hospital Service and Compensation Schedules attached to the Agreement are deleted and replaced in their entirety by the following:

    Hospital Services and Compensation Schedule for Methodist Dallas Medical Center, Methodist Charlton Medical Center, Methodist Mansfield Medical Center, Methodist Rehabilitation Hospital Effective Date through March 31, 2009.

    Medicare Hospital Services and Compensation Schedule for all Methodist Hospitals of Dallas

    Hospital Services and Compensation Schedule Methodist Richardson Medical Center
    Effective Date through September 30, 2009.

    Hospital Services and Compensation Schedule Methodist Richardson Medical Center
    Effective October 1, 2009 through March 31, 2010.

    Hospital Services and Compensation Schedule for all Methodist Hospitals of Dallas Effective April 1, 2010.

2. Section 3.1 of the Agreement is hereby deleted and replaced in its entirety by the following:

REDACTED

Company agrees to: (a) pay Hospital for Covered Services rendered to members of full risk Plans, and (b) notify Payors to forward payment to Company for payment to Hospital for Covered Services rendered to a Payor's Members. Such payment shall be made as follows: (a) for capitated services Hospital shall be paid according to the rates set forth in the Compensation Schedule; (b) for non-capitated services: the lesser of (i) Hospital's usual, customary and reasonable (ucr) billed charges; (ii) the rates set forth in the Compensation Schedule; within forty-five (45) days (or such shorter time as required by applicable law or regulation) of actual receipt by Company of a Clean Claim. Except where a contracted penalty is provided for under applicable law, and except for capitated services, in the event Company or Payor fails to pay each Clean Claim within forty five (45) days of submission, Company or Payor shall pay a contracted penalty, without notice from Hospital, of one percent and a half (1.5%) per month simple interest on the eligible, unpaid portion of such Clean Claim(s), beginning on the 46th day after submission of that Clean Claim through the date on which payment is made. For claims paid beyond forty-five (45) days of receipt and no contracted penalty was applied, Hospital shall notify Company for the additional payment of contracted reimbursement and/or contracted penalty. In relation to full risk plans, if applicable law or regulation does not require a penalty for Company's failure to pay a clean claim within the time period required by applicable law or regulation, then Hospital shall not be entitled to billed charges or any penalty. The receipt date for claims will be determined in accordance with applicable law or regulation.

Except as otherwise required under applicable Federal, or state law or regulation, or a Plan, if Company pays a claim and afterwards either –

3.1.1   Company discovers a possible underpayment to Hospital within the time period for Hospital to dispute payments stated in Section 3.5, or

3.1.2   Hospital discovers a possible underpayment to Hospital and gives prompt notice to Company within the time period for Hospital to dispute payments stated in Section 3.5 above,

then Company shall review the claim within forty-five (45) days of Company's discovery or Hospital's notice, and shall pay any eligible unpaid portion of the claim. Hospital shall be entitled to receive penalty payment of one percent and a half (1.5%) per month simple interest on the eligible, unpaid portion of such Clean Claim(s). For claims paid beyond forty-five (45) days of receipt and no contracted penalty was applied, Hospital shall notify Company for the additional payment of contracted reimbursement and/or contracted penalty. In relation to full risk Plans, if applicable law or regulation does not require a penalty for Company's failure to pay a clean claim within the time period required by applicable law or regulation, then Hospital shall not be entitled to billed charges or any penalty for a possible underpayment.

When required, Company shall comply with all applicable statutes and rules pertaining to prompt payment of clean claims, including Texas Insurance Code Articles 3.70-3C, Sections 843.336–843.353, and 28 Texas Administrative Code Sections 21.2801-21.2826, with respect to payment to a Participating Provider for Covered Services that are rendered to Members.

In accordance with applicable law and regulation, including but not limited to Texas Insurance Code art. 3.70-3C Sec. 3H and Sec. 843.319:

(1) Hospital may request a description and copy of the coding guidelines, including any underlying bundling, recoding, or other payment process and fee schedules applicable to specific procedures that the Hospital will receive under the contract;
(2) Company or Company's agent will provide the coding guidelines and fee schedules not later than the 30th day after the date the Company receives the request;
(3) Company or Company's agent will provide notice of changes to the coding guidelines and fee schedules that will result in a change of payment to Hospital not later than the 90th day before

      the date the changes take effect and will not make retroactive revisions to the coding guidelines and fee schedules;

(4) The contract may be terminated by Hospital on or before the 30th day after the date Hospital receives information requested under this subsection without penalty or discrimination in participation in other health care products or plans;

(5) Hospital shall only use or disclose the information for the purpose of practice management, billing activities, and other business operations; and disclose the information to a governmental agency involved in the regulation of health care or insurance;

(6) Company shall, on request of Hospital, provide the name, edition, and model version of the software that Company uses to determine bundling and unbundling of claims.

Except as otherwise required under applicable Federal, or state law or regulation, or a Plan, Company may, within twelve (12) months of the date of claim payment, notify Hospital of overpayments to Hospital, and Hospital agrees to return any such overpayment or payment made in error (e.g., a duplicate payment or payment for services rendered by Hospital to a patient who was not a Member), or return a written dispute of the overpayment within forty-five (45) days. In the event Company is unable to secure the return of any such overpayment or overpayment is not disputed in writing within such reasonable time, Company reserves the right to offset such payment against any other monies due to Hospital under this Agreement provided that Company has delivered to Hospital at least ten (10) days prior written notice and Hospital has otherwise failed to return such payment to Company.

Company and Hospital agrees to make to make available resources to regularly review outstanding accounts for services provided to Company's Members and to work to resolve such issues and to target the root cause of such payment delays. The parties further agree to regularly report the Hospitals' percentage of accounts receivable attributed to Company's Members that remain outstanding beyond sixty days from the billing date and when such percentage exceeds a mutually acceptable level, The Joint Operating Committee shall task an accountable party from Company and Hospital to draft and present an action plan to their respective management with recommended actions to address any underlying issues preventing more timely adjudication of Hospital's claims for Covered Services.

3.   Section 3.4 of the Agreement is hereby deleted and replaced in its entirety by the following:

3.4 Company Obligations to Pay. While Company may pay claims on behalf of Payors, Hospital and Company acknowledge that Company has no legal responsibility for the payment of such claims for Covered Services rendered to a Payor's Members; provided, however, that Company agrees to assist reasonably Hospital as appropriate in collecting any such payments. Company represents that it exercises commercially reasonable due diligence prior to entering into agreements with Payors. Company represents that its agreements with Payors require that such Payor make funds available to allow Company to reimburse participating providers for Covered Services provided to Members enrolled in the applicable self-funded plan. In the event that a Payor fails to make funds available to Company to pay for Covered Services, Company will act promptly in accordance with its policies, to end its relationship with that Payor, unless prohibited from doing so by applicable law or order of court. Where there is a Payor, Company shall have no obligation to pay Hospital in the event the Payor or member fails to pay Hospital.

4.   Section 4.9 Serious Reportable Events is hereby incorporated into the terms of the Agreement as follows:

4.9 Serious Reportable Events. Company and Hospital mutually commit to the promotion of Member safety and clinical quality including the prevention of potentially avoidable serious adverse events. Hospital agrees to comply with Company's Serious Reportable Events policy as described in Company's Serious Reportable Events policy available on Company's secure Provider Website. Company will notify Hospital of Material Changes to the Never Events/Serious Reportable Events list and policy updates. Hospital agrees to use best efforts to provide Company with prior notice of, and in any event will provide notice as soon as reasonably practicable of, any actions taken by Hospital described in this Section 4.9.

Methodist Hospitals of Dallas d/b/a MDMC, MCMC, MMMC, and MRH
And MHSR Medical Center d/b/a MRMC

5. All other terms and provisions of the Agreement not amended hereby shall remain in full force and effect. In the event of any inconsistency between the terms of this Amendment and the Agreement, the terms of this Amendment shall govern and control.

6. The Managed Care Agreement is hereby revised to be between Aetna Health, Inc., a Texas Corporation, on behalf of itself and its Affiliates (hereinafter referred to as "Company") and Methodist Hospitals of Dallas d/b/a MDMC, MCMC, MMMC, And MHS-CHC I LP d/b/a MRH, And MHSR Medical Center d/b/a MRMC (hereinafter referred to as "Hospital").

**IN WITNESS WHEREOF**, the parties have caused this Amendment to be executed below.

**Accepted By:**

Methodist Hospitals of Dallas d/b/a MDMC, MCMC, MMMC
By: _____ (Signature)
Printed Name: Tim B. Kirby
Title: Senior Vice President
Date: August 28, 2009
Tax I.D. Number: 75-0800066

MHSR Medical Center d/b/a MRMC
By: _____ (Signature)
Printed Name: Tim B. Kirby
Title: Vice President
Date: August 28, 2009
Tax I.D. Number: 26-4193362

MHS-CHC I LP d/b/a Methodist Rehabilitation Hospital
By: _____ (Signature)
Printed Name: Tim B. Kirby
Title: Sr. VP, Methodist Health System
Date: August 28, 2009
Tax I.D. Number: 20-5000978

Aetna Health Inc., a Texas corporation
By: _____ (Signature)
Printed Name: C. Carleton King
Title: President Health Care Delivery, SE & SW
Date: 9-29-09

Methodist Hospitals of Dallas d/b/a MDMC, MCMC, MMMC, and MRH
And MHSR Medical Center d/b/a MRMC

**HOSPITAL SERVICES AND
COMPENSATION SCHEDULE**
For Methodist Dallas Medical Center, Methodist Charlton Medical Center,
Methodist Mansfield Medical Center and Methodist Rehabilitation Hospital
Effective Date through March 31, 2010

# Pages 1-12

# REDACTED-
# CONFIDENTIAL

