**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Aetna Life Insurance Company | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **V.** | § | No. 4:13-cv-3412 |
| | § | |
| Methodist Hospitals of Dallas, *et al.* | § | |
| | § | |
| **Defendants** | § | |

---

# PLAINTIFF AETNA LIFE INSURANCE COMPANY'S
# MOTION FOR SUMMARY JUDGMENT

---

**OF COUNSEL:**
**Dimitri Zgourides**
**Texas Bar No. 00785309**
**S.D. ID No. 16513**
**Kendall M. Gray**
**Texas Bar No. 00790782**
**S.D. ID No. 19148**
**Mitchell A. Reid**
**Texas Bar No. 00785309**
**S.D. ID No. 34728**
**ANDREWS KURTH LLP**
**600 Travis, Suite 4200**
**Houston, Texas 77002**
**(713) 220-4200**
**(713) 220-4285 (Fax)**

**John B. Shely**
**Texas Bar No. 18215300**
**S.D. ID No. 7544**
**Andrews Kurth, L.L.P.**
**600 Travis Street, Suite 4200**
**Houston, TX 77002**
**713.220.4200**
**713.220.4285 (Fax)**

**ATTORNEY-IN-CHARGE FOR PLAINTIFF
AETNA LIFE INSURANCE COMPANY**

# TABLE OF CONTENTS

References to the Parties ............................................................................................. ii

Table of Citations .......................................................................................................... iii

I.     Nature and Stage of Proceeding ................................................................ 1

II.    Statement of Issues To Be Ruled Upon ..................................................... 1

III.   Summary of the Argument ........................................................................... 2

IV.    Statement of Facts ....................................................................................... 2

V.     Argument ....................................................................................................... 3

       A.   By Its Terms, the Texas Prompt Pay Statute Does Not
            Apply to Self-Funded Plans ................................................................. 3

            1.   "Insurance" from an "insurer" is required for
                 prompt pay penalties, and the Texas
                 Supreme Court has held that self-funded
                 plans are not insurance ........................................................... 4

            2.   The Texas Department of Insurance has
                 repeatedly confirmed that the Prompt Pay
                 Statute does not apply to self-funded plans ......................... 6

       B.   ERISA Preempts the Texas Prompt Pay Statute ............................ 10

            1.   The Texas Prompt Pay Statute "relates to"
                 ERISA plans under § 514(a), because it
                 purports to regulate claims processing ............................... 10

            2.   The Texas Prompt Pay Statute also conflicts
                 with ERISA's claims-processing regulations
                 and its exclusive remedies under ERISA
                 § 502(a) ................................................................................... 14

       C.   This Court Has Granted Judgment in Prompt Pay
            Cases Like This Before ...................................................................... 17

VI.    Conclusion .................................................................................................... 18

Certificate of Service .................................................................................................... 19

**REFERENCES TO THE PARTIES**

| | |
|---|---|
| Aetna | Plaintiff Aetna Life Insurance Company |
| Methodist | Defendant Methodist Hospitals of Dallas d/b/a Methodist Medical Center and Charlton Medical Center; Defendant Texas Health Resources; and Defendant Medical Center Ear, Nose & Throat Associates of Houston, P.A. (collectively "Methodist") |

**TABLE OF CITATIONS**

**CASES**

*Aetna Health Inc. v. Davila,*
    542 U.S. 200, 124 S. Ct. 2488 (2004)..........................................11, 16, 17

*Alessi v. Raybestos-Manhattan, Inc.,*
    451 U.S. 504, 101 S. Ct. 1895 (1981).....................................................14

*Am.'s Health Ins. Plans v. Hudgens,*
    915 F. Supp. 2d 1340 (N.D. Ga. 2012)...................................................13

*Asadi v. G.E. Energy (USA), L.L.C.,*
    720 F.3d 620 (5th Cir. 2013).....................................................................4

*Bank of La. v. Aetna U.S. Healthcare Inc.,*
    468 F.3d 237 (5th Cir. 2006).....................................................................1

*Bhalla v. Aetna Health Plans of Tex., Inc.,*
    No. H-11-4402 (S.D. Tex. March 2, 2012) .............................................17

*Boggs v. Boggs,*
    520 U.S. 833, 117 S. Ct. 1754 (1997).....................................................14

*Cal. Div. of Labor Standards Enforcement v. Dillingham
    Constr., N.A., Inc.,*
    519 U.S. 316, 117 S. Ct. 832 (1997)........................................................11

*Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.,*
    467 U.S. 837, 104 S. Ct. 2778 (1984).......................................................6

*Christensen v. Harris Cnty.,*
    529 U.S. 576, 120 S. Ct. 1655 (2000)....................................................6, 7

*Christus Health Gulf Coast v. Aetna, Inc.,*
    397 S.W.3d 651 (Tex. 2013) ...............................................................3, 4

*Cicio v. Does 1-8,*
    321 F.3d 83 (2d Cir. 2003) .....................................................................13

*Commodity Futures Trading Comm'n v. Schor,*
    478 U.S. 833, 106 S. Ct. 3245 (1986)...................................................7, 10

*Egelhoff v. Egelhoff,*
    532 U.S. 141, 121 S. Ct. 1322 (2001)...................................11, 12, 13, 14

*Ellis v. Liberty Life Assurance Co.*,
    394 F.3d 262 (5th Cir. 2004)........................................................12, 18

*Fed. Deposit Ins. Corp. v. Shaid*,
    142 F.3d 260 (5th Cir. 1998) (per curiam) .............................................1

*Fed. Sav. & Loan Ins. Corp. v. Glen Ridge I*
    *Condominiums, Ltd.*,
    750 S.W.2d 757 (Tex. 1988) .................................................................10

*F.F.P. Operating Partners, L.P. v. Duenez*,
    237 S.W.3d 680 (Tex. 2007) ...................................................................7

*Fiess v. State Farm Lloyds*,
    202 S.W.3d 744 (Tex. 2006) ...................................................................7

*FMC Corp. v. Holliday*,
    498 U.S. 52, 111 S. Ct. 403 (1990)....................................................5, 11

*Fort Halifax Packing Co. v. Coyne*,
    482 U.S. 1, 107 S. Ct. 2211 (1987)...................................................13, 14

*Hines v. Davidowitz*,
    312 U.S. 52, 61 S. Ct. 399 (1941).........................................................14

*Ingersoll-Rand Co. v. McClendon*,
    498 U.S. 133, 111 S. Ct. 478 (1990).....................................................14

*King v. Bluecross Blueshield of Ala.*,
    439 F. App'x 386 (5th Cir. 2011) .........................................................11

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134, 105 S. Ct. 3085 (1985)..............................................15, 16

*Medvigy v. Metro. Life Ins. Co.*,
    No. H-08-2623, 2010 WL 518774 (S.D. Tex. Feb. 2, 2010)............17, 18

*N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*,
    782 F. Supp. 2d 294 (S.D. Tex. 2011) ..................................................12

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41, 107 S. Ct. 1549 (1987).........................................11, 12, 16

*Quality Infusion Care, Inc. v. Unicare Health Plans of Tex.*,
    No. H-06-1689, 2007 WL 760368 (S.D. Tex. March 8,
    2007) .....................................................................................................17

*R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future &*
*Clean Water,*
336 S.W.3d 619 (Tex. 2011) ...............................................................6, 7

*Schachner v. Blue Cross & Blue Shield of Ohio,*
77 F.3d 889 (6th Cir. 1996) ....................................................................13

*Schoedinger v. United Healthcare of the Midwest, Inc.,*
557 F.3d 872 (8th Cir. 2009) ..................................................................12

*Shaw v. Delta Air Lines,* Inc.,
463 U.S. 85, 103 S. Ct. 2890 (1983) ........................................................11

*St. Luke's Episcopal Hosp. v. Principal Life Ins. Co.,*
H-05-3825, 2007 WL 189375 (S.D. Tex. Jan. 22, 2007).........................17

*Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.,*
410 S.W.3d 843 (Tex. 2012) .....................................................................5

**STATUTES**

29 U.S.C. §§ 1001–1461 .................................................................*passim*

29 U.S.C. § 1133 ......................................................................................15

29 U.S.C. § 1144(a) ...........................................................................5, 11, 18

Act of June 17, 2003, 78th Leg. (R.S.), ch. 214, §§ 2–3, 2003
Tex. Gen. Laws 1016 (effective June 17, 2003) ......................................7

Act of June 17, 2005, 79th Leg. (R.S.), ch. 728, § 11.037(b),
2005 Tex. Gen. Laws 2188 (effective Sept. 1, 2005) ...............................7

Act of June 15, 2007, 80th Leg. (R.S.), ch. 435, § 2, 2007 Tex.
Gen. Laws 766 (effective Sept. 1, 2007) ..................................................7

Act of May 30, 2009, 81st Leg. (R.S.), ch. 265, § 2, 2009 Tex.
Gen. Laws 724 (effective Jan. 1, 2010) ....................................................7

Act of June 19, 1997, 75th Leg. (R.S.), ch. 1024, §§ 1–2, 1997
Tex. Gen. Laws 3791 (effective June 19, 1997) ......................................7

TEX. INS. CODE ANN. § 36.001 (West 2009 & Supp. 2013) .......................7, 8

TEX. INS. CODE ANN. § 1301.0041 (West 2009 & Supp. 2013) ....................4

TEX. INS. CODE ANN. § 1301.001(2) (West 2009 & Supp. 2013) ..................4

TEX. INS. CODE ANN. § 1301.001(5) (West 2009 & Supp. 2013) ..................4

TEX. INS. CODE ANN. § 1301.007 (West 2009 & Supp. 2013) ..................7, 8

TEX. INS. CODE ANN. § 1301.131 (West 2009 & Supp. 2013) ......................4

TEX. INS. CODE ANN. §§ 1301.131–.139 (West 2009 & Supp. 2013) .........................................................................................1

TEX. INS. CODE ANN. § 1301.137 (West 2009 & Supp. 2013) .................4, 13

TEX. INS. CODE ANN. § 1301.137(c) (West 2009 & Supp. 2013) ................16

TEX. INS. CODE ANN. § 1301.137(f) (West 2009 & Supp. 2013)..................16

TEX. INS. CODE ANN. §§ 4151.001–.309 (West 2009 & Supp. 2013) .........................................................................................6

**REGULATIONS**

29 C.F.R. § 2560.503-1 ................................................................................15

29 C.F.R. § 2560.503-1(f)(2)(i) ....................................................................15

29 C.F.R. § 2560.503-1(f)(2)(iii)(A)..............................................................15

29 C.F.R. § 2560.503-1(f)(2)(iii)(B)..............................................................15

29 C.F.R. § 2560.503-1(h)(3)(i))....................................................................15

29 C.F.R. § 2560.503-1(i)(2)(iii)....................................................................15

29 C.F.R. § 2560.503-1(l).............................................................................15

**OTHER AUTHORITIES**

Tex. Dep't of Ins., *Helping You with Your Insurance Complaint*, http://www.tdi.texas.gov/pubs/consumer/cb003.html (last visited Dec. 26, 2013)...............................................................................9

Tex. Dep't of Ins., *Information & Advice for Physicians and Providers*, http://www.tdi.texas.gov/hprovider/doctors4.html (last visited Dec. 26, 2013)...............................................................................9

Tex. Dep't of Ins., *Prompt Pay FAQs, Prompt Pay and
    Potential Fraud,*
    http://www.tdi.texas.gov/hprovider/ppsb418faq.html (last
    visited Dec. 26, 2013) ..................................................................................9

Tex. Dep't of Ins., *Prompt Pay Reporting Information Page,*
    http://www.tdi.texas.gov/hprovider/documents/provclaims
    tips.pdf (last visited Dec. 26, 2013) ..........................................................9

Tex. Dep't of Ins., *Report on the Activities of the Technical
    Advisory Committee on Claims Processing,*
    http://www.tdi.texas.gov/reports/life/lhtaccp.html (last
    visited Dec. 26, 2013) ..................................................................................8

## I.   NATURE AND STAGE OF PROCEEDING

Methodist and Texas Health Resources have demanded more than $73 million from Aetna under the "prompt pay" provisions of the Texas Insurance Code (the "Texas Prompt Pay Statute").[1] Aetna filed this suit, seeking a declaration that (1) the Texas Prompt Pay Statute, by its terms, does not apply to self-funded plans, which do not involve the insurance relationship that is required under the Statute, or (2) if the Statute does apply to self-funded plans, it is preempted by ERISA.[2]

## II.   STATEMENT OF ISSUES TO BE RULED UPON

1.   Does the Texas Prompt Pay Statute apply to self-funded plans?

   • Interpretation of a state statute is reviewed *de novo*, with the Fifth Circuit interpreting the statute the way it believes "the state Supreme Court would, based on prior precedent, legislation, and relevant commentary." *Fed. Deposit Ins. Corp. v. Shaid*, 142 F.3d 260, 261 (5th Cir. 1998) (per curiam).

2.   Does ERISA preempt the Texas Prompt Pay Statute's application to self-funded employee benefit plans?

   • The legal determination that ERISA preempts a state law is reviewed *de novo. Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006).

---

[1]   TEX. INS. CODE ANN. §§ 843.336–.354, 1301.131–.139 (West 2009 & Supp. 2013). Defendant Medical Center Ear, Nose & Throat Associates of Houston, P.A. is another provider that Aetna reasonably believed would file an action. Shortly before commencing litigation, Defendants' counsel routinely send a letter requesting provider contracts that their clients have with Aetna. They did so here.

[2]   Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001–1461.

### III.   SUMMARY OF THE ARGUMENT

The Texas Prompt Pay statute purports to impose deadlines on the payment of medical claims submitted to insurers or HMOs by contracted providers. Here, the statute provides the Defendants no recovery because:

- The statute, by its terms, does not apply to self-funded benefits, but only to benefits provided by an insurer under a policy of insurance.

- The statute does not apply because it cannot apply. Claims payment penalties imposed by state law on self-funded ERISA plans are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").

Aetna therefore seeks a declaration that (1) the Texas Prompt Pay Act, by its terms, does not apply to self-funded plans, which do not involve the insurance relationship that is required under the statute, or (2) if the statutes do apply to self-funded plans, they are preempted by ERISA.

### IV.   STATEMENT OF FACTS

Aetna provides claims administration services for self-funded employee welfare benefit plans.[3] Indeed, approximately 75% of the plans administered by Aetna affiliates in Texas are self-funded plans in which the claims administrator does not underwrite or insure the benefits being paid.[4] Benefits are not prepaid and Aetna assumes no financial risk concerning the funding of medical benefits.[5]

---

[3]  Ex. A, ¶ 4. Aetna Life Insurance Company is the Aetna-related affiliate that provides claims administrative services to self-funded employee welfare benefits under the Defendants' Contracts. *Id.*

[4]  *Id.*

[5]  *Id.*

Instead, when Aetna provides claims administrative services to a self-funded employee welfare benefit plan, Aetna enters into a contract with the Plan Sponsor (the Employer) to act as a Third Party Administrator for the health care plan established and maintained by the Employer.[6] Under such a contract, Aetna provides claims administrative services in exchange for a fee, with the employer/plan sponsor remaining financially responsible for the claims.[7] Indeed the provider contracts underlying this case acknowledge that Aetna "has no legal responsibility for the payment of such claims for Covered Services rendered to a Payor's Members[.]."[8]

All the claims set out in Exhibits A-3 and A-4 to this motion represent claims involving self-funded employee welfare benefit plans on which the Methodist and Texas Health Resources contend that statutory prompt pay penalties are due.[9] But such a prompt pay claim fails as a matter of law.

## V.    ARGUMENT

### A.    By Its Terms, the Texas Prompt Pay Statute Does Not Apply to Self-Funded Plans

"This is a pure statutory-construction case: What does the [Texas] Prompt Pay Statute require?" *Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 653 (Tex. 2013). As in *Christus*, the inquiry here begins, and ends, "with the Legislature's chosen language." *Id.* (holding that the

---

[6]   Ex. A, ¶ 5.

[7]   Ex. A, ¶ 5.

[8]   Ex. A-1 (Amendment Sept. 1, 2009, p. 3, § 3.4); Ex. A-2, p. 14 § 4.1.2.4.

[9]   *See* Ex. A-3; Ex. A-4.

statute's plain language foreclosed suit against Aetna).[10] "[W]hen a statute's words are unambiguous and yield but one interpretation, the judge's inquiry is at an end." *Id.* at 653–54 (internal citation omitted). The Texas Prompt Pay Statute unambiguously excludes claims arising under self-funded plans—as the Texas Department of Insurance has repeatedly confirmed.

### 1. "Insurance" from an "insurer" is required for prompt pay penalties, and the Texas Supreme Court has held that self-funded plans are <u>not</u> insurance

Chapter 1301 of the Texas Insurance Code, applies to an "*insurer*" providing benefits "through the insurer's health *insurance policy*." TEX. INS. CODE ANN. § 1301.0041 (West 2009 & Supp. 2013) (emphasis added). If a claimant submits a "clean claim"[11] to the "insurer" and the "insurer" does not pay within a specified time frame, the "insurer" is subject to statutory penalties. *Id.* § 1301.137. An "insurer" is defined as "a life, health, and accident insurance company, health and accident insurance company, health insurance company, or other company operating under Chapter 841, 842, 884, 885, 982, or 1501, that is authorized to issue, deliver, or issue for delivery in this state health insurance policies." *Id.* at § 1301.001(5). And the Prompt Pay Statute narrowly defines "health insurance policy" as "a group or individual insurance policy, certificate, or contract providing benefits for medical or surgical expenses incurred as a result of accident or sickness." *Id.* at § 1301.001(2).

---

[10]  *See also Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 623 (5th Cir. 2013) ("We start and end our analysis with the text of the relevant statute").

[11]  A claim is "clean" if it meets statutorily-defined elements. *See* TEX. INS. CODE ANN. § 1301.131 (West 2009 & Supp. 2013) (specifying the elements of a clean claim). Aetna reserves all argument concerning whether the claims at issue are "clean claims."

The Texas Supreme Court has recently held that "[e]mployers who self fund their employee health-benefit plans are *clearly not insurance companies . . . ." Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.*, 410 S.W.3d 843, 848 (Tex. 2012) (emphasis added). "Although an employee health-benefit plan may in some respects act like an insurer with respect to the plan's participants, the Insurance Code *does not regulate it* as one, and ERISA generally precludes the [Insurance] Code from deeming these plans to be insurers or in the business of insurance." *Id.* at 854 (emphasis added) (citing 29 U.S.C. § 1144(a); *FMC Corp. v. Holliday*, 498 U.S. 52, 61, 111 S. Ct. 403 (1990)).

Chapter 843 of the Insurance Code, also known as the Texas Health Maintenance Organization Act, likewise cannot apply. Chapter 843 governs the submission of claims to a "health maintenance organization." *See* TEX. INS. CODE ANN. §§ 843.337(a), .338, & .342. The Act defines it as "a person who arranges for or provides to enrollees *on a prepaid basis* a health care plan . . . ." TEX. INS. CODE ANN. § 843.002(15) (emphasis added). A Third Party Administrator or "TPA" that administers claims for a self-funded plan is not a health maintenance organization. Benefits are not prepaid and the TPA has not assumed any financial risk for the medical expenses. The TPA is paying claims for which the employer is financially responsible.

Thus, the self-funded medical claims at issue here were not submitted to an "insurer" under a "health insurance policy" nor to a "health maintenance organization" subject to the Prompt Pay Statute;

they were submitted to third-party administrators.[12] Third party administrators are licensed and regulated under Chapter 4151 of the Texas Insurance Code, which does *not* provide for prompt pay penalties. *See* TEX. INS. CODE ANN. §§ 4151.001–.309 (West 2009 & Supp. 2013).

The Court "must take the Legislature at its word, respect its policy choices, and resist revising a statute under the guise of interpreting it." *Christus*, 397 S.W.3d. at 654. This is especially true given the "dizzyingly complex" healthcare-insurance and reimbursement system—a system that is "the product of innumerable legislative judgments about access, cost, and quality that courts are ill-suited to second-guess." *Id.* at 656. Self-funded plans do not involve an "insurer" providing benefits through a "health insurance policy." They involve claims administrators processing claims and making coverage determinations under the terms of a plan that is funded by an employer/plan sponsor. As a matter of law, they are not subject to the Prompt Pay Statute.

### 2. The Texas Department of Insurance has repeatedly confirmed that the Prompt Pay Statute does not apply to self-funded plans

When a statute's language is unambiguous, as here, "that is the end of the matter"; the Legislature's unambiguously expressed intent must be given effect. *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S. Ct. 2778 (1984); *see also R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011). Nonetheless, when a governmental agency charged with enforcing an unambiguous statute offers its interpretation

---

[12] Aetna's affiliates were duly licensed third party administrators under Texas law. *See* Ex. B.

of that statute, the agency's opinion is "entitled to respect" to the extent the interpretation "has the power to persuade." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587, 120 S. Ct. 1655 (2000); *see also Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 748 (Tex. 2006).[13]

When the Legislature "revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended" by the Legislature. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846, 106 S. Ct. 3245 (1986).[14] The Texas Legislature passed the Prompt Pay Statute in 1997,[15] and substantively revisited it in 2003,[16] 2005,[17] 2007,[18] and 2009.[19] Throughout this time, the Legislature charged the

---

[13] *See also R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011) (Courts "generally uphold an agency's interpretation of a statute it is charged by the Legislature with enforcing, so long as the construction is reasonable and does not contradict the plain language of the statute.") (internal quotations and citation omitted).

[14] *Cf. F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 692 (Tex. 2007) ("'The Legislature must be regarded as intending statutes, when repeatedly reenacted, as in the case here, to be given that interpretation which has been settled by the courts.'").

[15] Act of June 19, 1997, 75th Leg. (R.S.), ch. 1024, §§ 1–2, 1997 Tex. Gen. Laws 3791, 3791–3796 (effective June 19, 1997) (Ex. C).

[16] Act of June 17, 2003, 78th Leg. (R.S.), ch. 214, §§ 2–3, 2003 Tex. Gen. Laws 1016, 1016–24 (effective June 17, 2003) (Ex. D).

[17] Act of June 17, 2005, 79th Leg. (R.S.), ch. 728, § 11.037(b), 2005 Tex. Gen. Laws 2188, 2226–34 (effective Sept. 1, 2005) (Ex. E).

[18] Act of June 15, 2007, 80th Leg. (R.S.), ch. 435, § 2, 2007 Tex. Gen. Laws 766, 766–67 (effective Sept. 1, 2007) (Ex. F).

[19] Act of May 30, 2009, 81st Leg. (R.S.), ch. 265, § 2, 2009 Tex. Gen. Laws 724, 724–25 (effective Jan. 1, 2010) (Ex. G).

Texas Department of Insurance with the Statute's enforcement. *See* Tex. Ins. Code Ann. §§ 36.001, 1301.007 (West 2009 & Supp. 2013). And according to the Department, its "long-standing interpretation of the issue, based upon consultation with the Office of the Attorney General," is that the Prompt Pay Statute *does not apply* to medical claims under self-funded plans.[20]

For example, in 2004 the Department of Insurance issued an official report about claims processing and prompt pay. The report, which was addressed to the Governor of Texas, the Lieutenant Governor, and the Speaker of the Texas House of Representatives, declares that the Prompt Pay Statute, as amended in 2003, "does not apply to plans that TDI does not directly regulate, such as valid, self-funded ERISA plans . . . ."[21] According to the report, physicians and providers urged the Department to "extend the prompt pay provisions . . . to licensed carriers acting as [third party administrators] to self-funded ERISA plans."[22] The Department recognized, however, that "the state may not regulate a self-funded ERISA plan, even if administered by a licensed insurer or HMO."[23]

---

[20] Ex. H at A0022 (Tex. Dep't of Ins., *Report on the Activities of the Technical Advisory Committee on Claims Processing*, http://www.tdi.texas.gov/reports/life/lhtaccp.html (last visited Dec. 26, 2013)).

[21] Ex. H at A0003-A0004 (Tex. Dep't of Ins., *Report on the Activities of the Technical Advisory Committee on Claims Processing*, http://www.tdi.texas.gov/reports/life/lhtaccp.html (last visited Dec. 26, 2013)).

[22] Ex. H at A0022 (Tex. Dep't of Ins., *Report on the Activities of the Technical Advisory Committee on Claims Processing*, http://www.tdi.texas.gov/reports/life/lhtaccp.html (last visited Dec. 26, 2013)).

[23] *Id.*

The Department's interpretation of the Prompt Pay Statute is the same today as it was in 2004. Its public website advises consumers that "Prompt-payment laws do not apply" to "claims (called third-party claims) involving self-funded health plans."[24] Likewise, the website's "Prompt Pay FAQs" section instructs that "[t]he prompt pay statutes and rules do not apply to self-funded ERISA plans[.]"[25] Moreover, the Department's "Information & Advice for Physicians and Providers," in no uncertain terms, is that the Prompt Pay Statute does not apply to self-funded plans:

> **Q:  Do prompt payment laws apply to self-funded plans?**
>
> **A:**  The prompt payment laws and the clean claims rules do not apply to valid self-funded plans. These plans are subject to the federal Employee Retirement Income Security Act of 1974 (ERISA) and Department of Labor regulations.[26]

The Texas Department of Insurance thus includes self-funded plans on the list of plans exempted from the Prompt Pay Statute's quarterly and annual reporting requirements for HMOs and insurers:[27]

---

[24]  Ex. I at A 0033-A 0034 (Tex. Dep't of Ins., *Helping You with Your Insurance Complaint*, http://www.tdi.texas.gov/pubs/consumer/cb003.html (last visited Dec. 26, 2013)).

[25]  Ex. J at A 0044 (Tex. Dep't of Ins., *Prompt Pay FAQs*, Prompt Pay and Potential Fraud, http://www.tdi.texas.gov/hprovider/ppsb418faq.html (last visited Dec. 26, 2013)).

[26]  Ex. K at A 0054 (Tex. Dep't of Ins., *Physician/Provider FAQs Information & Advice for Physicians and Providers*, http://www.tdi.texas.gov/hprovider/doctors4.html (last visited Dec. 26, 2013)).

[27]  Ex. L at A 0063 (Tex. Dep't of Ins., *Prompt Pay Reporting Information Page*, http://www.tdi.texas.gov/hprovider/documents/provclaimstips.pdf (last visited Dec. 26, 2013)).

| Reason | Description |
|---|---|
| Church | All of your PPO or HMO business written in Texas is under self-funded church employee plans |
| Government plans | All of your PPO or HMO business written in Texas is funded through federal plans such as Medicare, Medicare Supplement, Medicaid, or CHIP plans |
| No HB610 Contracts | You have no active plans/policies in Texas that fall within the requirements of TIC Chapters 843 and 1301 with provider contracts issued or renewed prior to August 16, 2003 |
| Not in Texas | No individual or group PPO or HMO plans in force in Texas |
| Other | Other means none of the above or a combination of several of the above. If you select other, you must provide an explanation / description of why your company / HMO is exempt from this data call. |
| Other Carrier | Single service carrier whose data is reported through another carrier |
| Run off | You are no longer issuing new plans or renewing existing plans, and you have less than 100 lives insured in Texas and less than 100 claims still active |
| Self-funded | All of your PPO or HMO business written in Texas is under self funded ERISA, federal, state, or local government employee plans |
| Worker Comp | All claims were paid pursuant to a worker's compensation insurance policy |

Despite multiple opportunities to do so, the Legislature has never expressed any disapproval with—much less rejected—the Texas Department of Insurance's interpretation. The Legislature has not acted because the Department's interpretation is *correct*. Self-funded plans are not subject to the Texas Prompt Pay Statute. Indeed, they are not subject to penalties under state law because such penalties are preempted by federal law.

**B.      ERISA Preempts the Texas Prompt Pay Statute**

Courts are to construe statutes in a manner which avoids serious doubt of their constitutionality. *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 841 (1986); *see also Fed. Sav. & Loan Ins. Corp. v. Glen Ridge I Condominiums, Ltd.*, 750 S.W.2d 757, 759 (Tex. 1988). And here the text of the statute need not entangle one in questions of ERISA preemption as concerning self-funded ERISA plans. Nevertheless, the defendants here claim that the statutes do apply to self-funded plans. If so, preemption is the inevitable result.

**1.      The Texas Prompt Pay Statute "relates to" ERISA plans under § 514(a), because it purports to regulate claims processing**

ERISA's comprehensive statutory scheme is designed "to ensure that employee benefit plan regulation would be exclusively a federal

concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S. Ct. 2488 (2004) ("The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans.") (internal quotation omitted). To that end, section 514(a) of ERISA, 29 U.S.C. § 1144(a), expressly supersedes "any and all State laws insofar as they may now or hereafter relate to" any ERISA plan.

"The Supreme Court has characterized this preemption provision as 'broadly worded,' 'clearly expansive,' and 'conspicuous for its breadth,' among other things." *King v. Bluecross Blueshield of Ala.*, 439 F. App'x 386, 388–89 (5th Cir. 2011) (citing *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, 324, 117 S. Ct. 832 (1997)) (Ex. N).[28] (Ex. N). Any state law "relates to" an ERISA plan for purposes of ERISA § 514(a) "'if it has a connection or reference to the plan.'" *Id.* at 389 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S. Ct. 1549 (1987)). Assuming that the Prompt Pay Statute applies to self-funded ERISA plans, it meets the test.

State laws have a "connection with" ERISA plans — and therefore "relate to" those plans for purposes of preemption — if they interfere with uniform plan administration. *See, e.g., Egelhoff v. Egelhoff*, 532 U.S. 141, 147, 121 S. Ct. 1322 (2001); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S. Ct. 2890 (1983). As the Supreme Court has explained, one of the reasons that Congress enacted ERISA's express preemption provision was to establish "a set of standard procedures to guide *processing of*

---

[28] The reason for such broad preemption is that state-law regulation would "complicate the administration of nationwide plans, producing inefficiencies that employers might offset with decreased benefits." *FMC Corp.*, 498 U.S. at 60.

*claims* and *disbursement* of benefits.*" Egelhoff*, 532 U.S. at 146, 148 (internal quotation omitted; emphasis added); *see also Pilot Life Ins. Co.*, 481 U.S. at 48 (holding that state law claims "based on alleged improper processing of a claim for benefits . . . undoubtedly meet the criteria for pre-emption under § 514(a)" (emphasis added)).

Thus, state law penalties for tardy administration of benefits are preempted by ERISA. *See Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 275–78 & n.53 (5th Cir. 2004). In *Ellis*, the Fifth Circuit held that ERISA preempted an insured's claims against an insurer under section 21.55 of the Texas Insurance Code (now section 542.060), which subjected insurers to an 18-percent interest penalty and attorneys' fees for late-paid claims. *See also N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 315–17 (S.D. Tex. 2011) (explaining recodification and preempting prompt pay claims asserted under Chapter 843 of the Texas Insurance Code against self-funded plans).

Likewise, in *Schoedinger v. United Healthcare of the Midwest, Inc.*, 557 F.3d 872 (8th Cir. 2009), the Eighth Circuit held that ERISA preempted medical care providers' claims against a third party administrator of self-funded plans under Missouri's prompt pay law. Missouri's law imposed "statutory penalties on a health carrier that 'fail[ed] to pay, deny or suspend' a claim within forty days, and interest of one percent per month if the health carrier [failed to pay] 'the claimant on or before the forty-fifth day.'" *Id.* at 875 (quoting Mo. Rev. Stat. § 376.383.5-.6). The court recognized that these requirements created a direct conflict with ERISA and that "the impact of [prompt pay laws] on

plan administration [was] not 'remote,'" as the plaintiffs had argued to avoid preemption. *Id.* at 876.[29]

State prompt pay laws "compel certain action—'prompt' benefit determinations and payments—by plans and their administrators." *Am.'s Health Ins. Plans v. Hudgens*, 915 F. Supp. 2d 1340, 1359 (N.D. Ga. 2012). As such, they "interfer[e] with nationally uniform administration of ERISA plans." *Id.* at 1359–60. Indeed, to say that the imposition of state prompt pay requirements "would 'interfere' with uniformity may, in fact, be an understatement." *Id.* at 1360 n.25 (noting the "patchwork" of prompt pay existing in 2007). Hence the district court in *Hudgens* held that ERISA preempted Georgia prompt pay statutes regulating self-funded ERISA plans. *Id.* at 1360. *Hudgens* thus joined a number of other courts, including the Fifth Circuit, in holding that ERISA preempts state prompt pay laws.

Similarly, the Texas Prompt Pay Statute seeks to govern how and when plans pay benefits, and the calculation and payment of interest at a specified rate on any "late" claims. *See* Tex. Ins. Code Ann. § 1301.137 (West 2009 & Supp. 2013) (statutory penalties). The law thus has a "connection with" ERISA plans, because "the payment of benefits [is] a *central matter* of plan administration." *Egelhoff*, 532 U.S. at 148 (emphasis added); *see also Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9, 107 S. Ct. 2211 (1987) (claims-processing is part of plan

---

[29] *See also Cicio v. Does 1-8*, 321 F.3d 83, 95 (2d Cir. 2003) (holding that ERISA preempted an insured's claim against a Health Maintenance Organization under a New York state law that required ERISA plans to reply to requests for certain treatments within 24 hours); *Schachner v. Blue Cross & Blue Shield of Ohio,* 77 F.3d 889, 896–98 (6th Cir. 1996) (holding that ERISA preempted a "negligence claim based on an alleged violation of Ohio's prompt payment statute").

administration); *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 525, 101 S. Ct. 1895 (1981) (preempting "even indirect state action" affecting ERISA plans).

The Texas Prompt Pay Statute also "refers to" ERISA plans — and therefore "relates to" those plans for purposes of preemption — because it is "specifically designed to affect" how the plans provide benefits. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140, 111 S. Ct. 478 (1990) (explaining that all "state laws which are specifically designed to affect employee benefit plans are pre-empted") (internal quotations omitted). The hospitals here contend that self-funded plans must pay by the deadline or face penalties under the Prompt Pay Statute. If so, the Prompt Pay Statute does exactly what ERISA § 514(a) forbids: it imposes state-specific rules on matters of plan administration that are supposed to be governed by ERISA's nationally uniform federal standards.

### 2. The Texas Prompt Pay Statute also conflicts with ERISA's claims-processing regulations and its exclusive remedies under ERISA § 502(a)

A state law is also preempted, under long-standing principles of conflict preemption, if it "conflicts with the provisions of ERISA or operates to frustrate its objects." *Boggs v. Boggs*, 520 U.S. 833, 841, 117 S. Ct. 1754 (1997).[30] In addition to being preempted under ERISA § 514(a), the Texas Prompt Pay Statute conflicts with two ERISA provisions regulating claims processing *and* frustrates ERISA's goal of establishing "nationally uniform plan administration." *Egelhoff*, 532 U.S. at 148.

---

[30] *See also Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399 (1941) (declaring that a state law is preempted if it "stands as an obstacle to the accomplishment and execution of [the federal law's] full purposes.").

– 14 –

ERISA § 503 requires that every employee benefit plan include a claims procedure, under which a participant or beneficiary must be notified if his claim for benefits has been denied, and afforded an opportunity for a full and fair review of the decision by a fiduciary of the plan. 29 U.S.C. § 1133. Under this provision, the United States Department of Labor has promulgated extensive and detailed uniform federal standards for claims processing — including time periods for processing claims for health benefits. *See* 29 C.F.R. § 2560.503-1 (Ex. M).

Briefly, if a health benefit claim is denied, these federal ERISA regulations require that the plan provide notice of the denial within thirty days of receiving the claim, a time period that can be extended for an additional fifteen days under specified circumstances. *See* 29 C.F.R. § 2560.503-1(f)(2)(iii)(B). Claimants must be provided at least 180 days thereafter within which to appeal an adverse decision (29 C.F.R. § 2560.503-1(h)(3)(i)), and the plan must then issue a decision, generally within sixty days of receiving the appeal, a time period that can be extended for an additional sixty days under specified circumstances. 29 C.F.R. § 2560.503-1(i)(2)(iii). Shorter time periods apply in certain circumstances, such as in the payment of a "pre-service claim" or an "urgent care claim." 29 C.F.R. §§ 2560.503-1(f)(2)(i), (iii)(A). If a plan fails to establish or follow claims procedures consistent with the federal regulatory requirements, "a claimant shall be deemed to have exhausted administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] . . . ." 29 C.F.R. § 2560.503-1(l).

The civil enforcement provisions of ERISA § 502(a) set forth the *exclusive* remedies for "improper or untimely processing of benefit

claims." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146–48, 105 S. Ct. 3085 (1985); *see also Pilot Life*, 481 U.S. at 52 ("Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits."). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).

Here, the Texas Prompt Pay Statute impermissibly "supplements" or "supplants" the exclusive remedies available under ERISA § 502(a). The Prompt Pay Statute, for example, imposes interest penalties on "late" payments — remedies not provided for under ERISA § 502(a). *See* TEX. INS. CODE ANN. § 1301.137(c), (f) (West 2009 & Supp. 2013). The Statute also empowers the Texas Insurance Commissioner to impose additional administrative penalties — another remedy not provided under ERISA § 502(a). *See id.* at § 1301.137(k).

By imposing its own claims-processing requirements and civil enforcement penalties, the Texas Prompt Pay Statute upsets ERISA's "careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life*, 481 U.S. at 54. "The policy choices reflected in" ERISA § 503's claims processing rules and ERISA § 502(a)'s remedies "would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.*

– 16 –

**C.      This Court Has Granted Judgment in Prompt Pay Cases Like This Before**

This Court has already encountered issues like the ones raised in this motion, and it has already ruled in favor of Aetna's position.

In *St. Luke's Episcopal Hosp. v. Principal Life Ins. Co.*, for example, the claims administrator of a self-funded plan moved for summary judgment that a hospital's prompt pay claim failed because, like Aetna,  the claims administrator was neither an "insurer" nor a "health maintenance organization" under the statute. The Court properly granted the motion.[31]

And the Court has previously found that ERISA preemption applies in payment disputes with medical providers.[32] Indeed this Court has upheld removal to federal court by an Aetna affiliate of a provider dispute with prompt pay claims on the grounds of federal question jurisdiction under ERISA's complete preemption doctrine.[33]

Simply stated, "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Medvigy v. Metro. Life Ins. Co.*, No. H-08-2623, 2010 WL 518774 (S.D. Tex. Feb. 2, 2010) (Lake, J.) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)) (Ex. P).  As a result, "ERISA preempts state-law claims for . . . *untimely processing of claims*

---

[31] *See* No. H-05-3825, 2007 WL 189375 (S.D. Tex. Jan. 22, 2007) (Lake, J.) (Ex. R).

[32] *See, e.g., Quality Infusion Care, Inc. v. Unicare Health Plans of Tex.*, No. H-06-1689, 2007 WL 760368 * 2-3 (S.D. Tex. March 8, 2007) (Lake, J.) (Ex. Q).

[33] *See Bhalla v. Aetna Health Plans of Tex., Inc.*, No. H-11-4402 (S.D. Tex. March 2, 2012) (Lake, J.) (Memorandum Opinion and Order denying remand) (Ex. O).

*in violation of the Texas Insurance Code.*" *Medvigy*, 2010 WL 518774 *2 (S.D. Tex. Feb. 2, 2010) (citing *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 273–78 (5th Cir.2004)) (Ex. P).

Aetna simply seeks to have the law governing all such disputes applied to its own dispute with these providers.

## VI.   CONCLUSION

Give the Texas Legislature credit. The Legislature drafted the Prompt Pay Statute to avoid entangling self-funded plans in Texas law because it knew that no ostensible regulation of an insurance relationship by a state can be made to apply to self-funded plans. *See* 29 U.S.C. § 1144(b)(2)(B). Yet here, the Defendants seek to blow through both the legislative drafting and the United States Code.

Aetna therefore asks the court to declare as a matter of law that prompt-pay penalties cannot result from claims submitted under self-funded plans because (1) the Texas Prompt Pay Statute does not apply to self-funded plans, and (2) ERISA preempts all such state-law interference in the administration of self-funded ERISA plans.

Respectfully submitted,

ANDREWS KURTH LLP

OF COUNSEL:                          By:   *s/ John B. Shely*
Dimitri Zgourides                        John B. Shely
Texas Bar No. 00785309                   Texas Bar No. 18215300
S.D. ID No. 16513                        S.D. ID No. 7544
Kendall M. Gray                          *jshely@andrewskurth.com*
Texas Bar No. 00790782                   600 Travis, Suite 4200
S.D. ID No. 19148                        Houston, Texas 77002
Mitchell A. Reid                         (713) 220-4200
Texas Bar No. 00785309                   (713) 220-4285 (Fax)
S.D. ID No. 34728
ANDREWS KURTH LLP                    ATTORNEY-IN-CHARGE FOR
600 Travis, Suite 4200               PLAINTIFF AETNA LIFE
Houston, Texas 77002                 INSURANCE COMPANY
(713) 220-4200
(713) 220-4285 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2013, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who area known "Filing Users":

> Mikal C. Watts
> William J. Maiberger
> Watts Guerra, LLP
> 4 Dominion Drive
> Building 3, Suite 100
> San Antonio, Texas 78257
>
> Joseph V. Gibson, IV
> Law Office of Joseph V. Gibson, PC
> 10330 Lake Road, Building X
> Houston, Texas 77070

*John B. Shely*
John B. Shely