IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AETNA LIFE INSURANCE COMPANY | * * | |
| Plaintiff | * * | |
| V. | * * | No. 4:13-cv-3412 |
| METHODIST HOSPITALS OF DALLAS d/b/a Methodist Medical Center and Charlton Medical Center TEXAS HEALTH RESOURCES and MEDICAL CENTER EAR, NOSE & THROAT ASSOCIATES OF HOUSTON, P.A. | * * * * * * * * | |
| Defendants | * | |

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(B)(3), AND ALTERNATIVELY TO TRANSFER VENUE**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants, Texas Health Resources ("THR") and Methodist Hospitals of Dallas ("Methodist-Dallas"), and file this their reply to Aetna Life Insurance Company's Response to Defendants' Motion to Dismiss Under Rule 12(b)(3) and Alternatively to Transfer Venue ("Response") and in support thereof, would respectfully show the Court as follows:

**I.      SUMMARY OF ARGUMENT**

In its Response, Aetna first argues venue is proper "in the district where the plan is administered" under 29 U.S.C. §1132(e)(2),[1] yet has not properly brought such a case under that statute as Defendants' Texas Prompt Pay Act ("TPPA") claims do not involve claim denials, rather only late-pay allegations with respect to claims already paid.

---
[1] *See* Response, ¶II(A), pp. 2-3.

1

Knowing it has no proper venue above, Aetna then reaches, and seeks to secure venue under 28 U.S.C. §1391(b)(2) and §1391(d) on the basis that one of Defendants' attorneys' resides in Houston,[2] by citing *Bank One, N.A. v. Euro-Alamo Investments, Inc.*[3] - a case which does not justify its cause.

Finally, Aetna seeks deference for its chosen forum,[4] when it is entitled to none in the first place, since it ignores Fifth Circuit guidance in *Volkswagen I & II*.

## II.   ARGUMENT

### A.   Venue is Not Proper Here Under 29 U.S.C. §1132(e)(2)

Aetna argues that it is a fiduciary properly bringing suit under 29 U.S.C. §1132(a)(3). However, because Defendants are not plan beneficiaries, and because they seek penalties only for late-payment of claims Aetna decided to pay and did pay, its claims do not involve the plan itself. Aetna therefore can allege no violation "of any provision of this subchapter or the terms of the plan" under subsection (3)(a),[5] and therefore has no proper venue under (3)(b)(i) to redress plan violations,[6] nor under (3)(b)(ii) to "enforce any provisions of this subchapter or the terms of the plan."[7]

This is evidenced by the only two cases Aetna could muster in support of its argument. First, Aetna cites *Burlington N. Sante Fe Inv. & Ret. Plan v. Marovich*,[8] yet there, the Plan brought suit against a plan beneficiary. Here, Defendants are not plan beneficiaries, and no dispute exists as to what should have been paid under the plan. The six Explanations of Benefits ("EOBs") attached to its Response with respect to payments made under both "The Exxon Plan" and "The SCI Plan" each demonstrate

---

[2] *See* Response, ¶II(B), p. 4.
[3] 211 F. Supp. 2d 808, 811 (N.D. Tex. 2002).
[4] *See* Response, ¶II(C), pp. 4-5.
[5] 29 U.S.C. §1132(a)(3)(a).
[6] 29 U.S.C. §1132(a)(3)(b)(i).
[7] 29 U.S.C. §1132(a)(3)(b)(ii).
[8] 193 F. Appx. 370, 371 (5th Cir. 2006), cited in Response, p. 2, n. 4, attached as Ex. F thereto.

*payments made with no denial* of claims.[9] Each EOB has a column entitled "not payable," which is empty with respect to the payments made for each of the six patients referenced by Aetna here. Thus, unlike in *Marovich*, no dispute exists here between these parties as to whether those payments made under the plan "were proper"[10] and should have been made. As such, Defendants' pre-suit late-pay claims identified by Aetna in its Response do not involve the plan itself,[11] and do not give rise to venue under 28 U.S.C. §1132.[12]

Likewise, *Brown Schools, Inc. v. Fla. Power Corp.*[13] involved claims by a plan beneficiary "based on the Defendant Plan's failure to pay for all of the services received,"[14] conduct "really better described as a breach of the Plan."[15] By contrast, the state-law TPPA late-pay claims here involving claims that Aetna decided to pay – and did pay – do not involve "a breach of the Plan," and therefore are not claims to be brought under the civil enforcement provision of 29 U.S.C. §1132. As such, venue does not lie as alleged by Aetna "in the district where the plan is administered."[16]

---

[9] *See* Response, Ex. C, ¶3-8 (re: Claims Submitted by Methodist-Dallas for Patients St.Ry., Sl.S. and S.R.), Ex. C-1, pp. 2-5 Patient Name St.Ry. (with no amounts listed as "not payable"); Ex. C-1, pp. 6-7 Patient Name Sl.S. (with no amounts listed as "not payable"); Ex. C-1, pp. 8-10 Patient Name S.R. (with no amounts listed as "not payable"); Ex. C-2, ¶9-10 (re: Claims Submitted by Methodist-Dallas for Patient G.C.), Ex. C-2, pp. 2-3 Patient Name G.C. (with no amounts listed as "not payable"); Ex. E, ¶7-8 (re: Claims Submitted by T.H.R. for Patients S.W. and R.S.), Ex. E-1 thereto, pp. 2-8 Patient Name S.W. (with no amounts listed as "not payable"); Ex. E-1, pp. 9-11 Patient Name R.S. (with no amounts listed as "not payable").
[10] *See Marovich*, 193 Fed. Appx. at 371 (The plan "established that the distributions to Marovich's former spouse were proper under ERISA and that the Plan was entitled to recover for its distributions.").
[11] *See e.g.*, *Lone Star OB/GYN Assoc. v. Aetna Health, Inc.*, 579 F.3d 525, 521 (5th Cir. 2009). ("While Aetna is correct that any determination of benefits under the terms of a plan - i.e., what is "medically necessary" or a "Covered Service"- does fall within ERISA, Lone Star's claims are entirely separate from coverage and arise out of the independent legal duty contained in the contract and the TPPA.").
[12] Even if they did, pre-suit claims spreadsheets do not give rise to an argument that claims determinations exist. *Mem'l Hermann Hosp. Sys. v. Aetna Health, Inc.*, CIV.A. H-09-03342, 2010 WL 3817163 (S.D. Tex. Sept. 27, 2010) (Harmon, J.) (Ex. A hereto).
[13] 806 F. Supp. 146 (W.D. Tex. 1992), cited in Response, p. 2, n. 4.
[14] *Id.*, 806 F. Supp. at 148.
[15] *Id.*, 806 F. Supp. at 151.
[16] Response, p. 2.

### B. Venue is Not Proper in The District Where One of the Defendants' Attorneys Lives

Perhaps recognizing its position with respect to 29 U.S.C. §1132 lacks merit, Aetna next seeks to stretch the facts at bar into proper venue under 28 U.S.C. §1391(b)(2) and (d) by claiming that the residence of one of Defendants' attorneys creates venue here. There are at least three problems with Aetna's argument.

First, Aetna invokes a pre-suit demand letter sent by the undersigned, a law firm located in the Western District of Texas, merely listing co-counsel Mr. Gibson on its "cc" list.[17] Aetna cites no case for the proposition that the residence of one's counsel copied on a pre-suit settlement demand letter sent by another counsel residing in a different district establishes proper venue under 28 U.S.C. §1391(b)(2) or §1391(d). An extensive search for such a case by the undersigned of the case law construing both sections has come up empty.

Second, Aetna cites the list of lawyers involved in the Certificate of Interested Persons. While Defendants understand the local rules and this Court's own rules requiring a Certificate of Interested Persons to be filed, no case can be located establishing venue based on the mailing list of lawyers contained therein.

Third, Aetna's cited case, *Bank One, N.A. v. Euro-Alamo Investments, Inc.*,[18] does not support its argument for venue here based on Mr. Gibson's residence. *Bank One* is inapposite here for two reasons. Initially, *Bank One* involved a dispute brought in Dallas in 2001 regarding lease negotiations occurring in Dallas in 1991. Facts alleged by the Plaintiff[19] justifying venue there included:

---

[17] Response, ¶II(B), p. 4, n. 12, citing Ex. C to its Original Complaint as "identifying Joseph Gibson on Methodist's original demand letter."
[18] 211 F. Supp. 2d 808 (N.D. Tex. 2002).
[19] *See* Ex. B - Plaintiff's Response and Brief to Defendants' Motion to Dismiss for Improper Venue or to Transfer Venue, filed in *Bank One, N.A. v. Euro-Alamo Investments, Inc.*, Civil Action No. 3:01-CV-1516-D, In the Northern District of Texas – Dallas Division.

- "When the Lease (containing the disputed renewal terms) was executed on November 1, 1991 and until February 2001, the principal banking offices of Bank One, Texas were located in Dallas County."[20]

- "Defendants have admitted that 'some actions may have been taken in Dallas, Texas ten (10) years ago when the original lease [containing the renewal terms] was signed.' Defendants' Motion at ¶6."[21]

- "Virtually all of Bank One's material negotiations pertaining to the renewal of the Lease occurred in Dallas County."[22]

- "When the Lease was originally executed, all parties to the Lease resided in Dallas County."[23]

- "In accordance with the Lease, Bank One made its rental payments in Dallas County."[24]

Next, the issue of the attorney's involvement there arose only with respect to the location of persons involved with the underlying actions giving rise to that lawsuit, and the Defendants,

> admitting that Bank One's attorneys did act in Dallas in their attempts to renew the lease. Given that such renewal negotiations tend to be conducted by attorneys, the distinction between acts by attorneys in contrast with acts by other agents of Bank One is unavailing.[25]

There, the attorney involved in the lease negotiations giving rise to the lawsuit was a Mr. Thawley,[26] a lawyer not listed as one of the attorneys of record in the case itself under the "Attorneys and Law Firms" listed in the Court's opinion.[27] By contrast, Aetna seeks to transpose the *Bank One* court's dicta concerning an attorney-witness into

---

[20] *Id.*, ¶II(A), p. 2.
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.* at p. 3.
[25] *Bank One,* 211 F. Supp. 2d at 811.
[26] *See* Ex. C - Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss for Improper Venue, or in the Alternative, Motion to Transfer Venue, ¶2, p. 2 ("Mr. Thawley (an attorney) is the only witness identified by B-1 who resides in Dallas County, Texas and who has personal knowledge concerning the attempted renewal.").
[27] *Bank One,* 211 F. Supp. 2d at 809 ("Attorneys and Law Firms").

a basis for venue here arising from the residence of an attorney of record in this case, one who will not be a witness in this case.

### C. Aetna Provides No Persuasive Response to Defendants' Section 1404 Motion

Aetna's Response concerning Defendants' alternative motion to transfer under Section 1404[28] is unpersuasive for five reasons.

First, Aetna argues the Defendants "present no facts whatsoever in support" of their Motion. This is untrue. Methodist-Dallas provided the Affidavit of Charles Brizius,[29] repeatedly citing to it in its venue motion for the facts supporting its motion.[30] Likewise, THR provided the Affidavit of James D. Logsdon,[31] repeatedly citing to it in its venue motion for the facts supporting its motion.[32] As shown below, these affidavits set forth in detail that all underlying facts, documents and witnesses to this case reside outside the Southern District of Texas, and the specific distances separating the location of where such persons work and Aetna's chosen venue of Houston, Texas.

Second, in this regard, Aetna's citation of *In re Volkswagen AG*[33] is particularly unhelpful to its cause. In *Volkswagen I*, the Fifth Circuit issued a mandamus after a trial court denied a motion to transfer venue filed on the basis that the witnesses resided hundreds of miles away. The Court reasoned as follows:

---

[28] *See* Response, ¶II(C), pp. 4-5.
[29] Attached as Ex. A to Joint Motion of Defendants Methodist-Dallas and Texas Health Resources for the Court to Abstain from Exercising Jurisdiction and to Dismiss Plaintiff's First Amended Complaint Against Them (hereinafter referred to as the "Brizius Affidavit")
[30] *See* Defendant Methodist-Dallas' Motion to Dismiss Plaintiff's First Amended Complaint under Rule 12(b)(3) of the Federal Rules of Civil Procedure and then in the Alternative, Motion to Transfer Venue Pursuant to 28 USC §1406 or §1404(a), p. 3, n. 7, 8, 9, 13; p. 4, n. 18, 19, 20; p. 5, n. 21, 22, 23; p. 10, n. 29.
[31] Attached as Ex. B to Joint Motion of Defendants Methodist-Dallas and Texas Health Resources for the Court to Abstain from Exercising Jurisdiction and to Dismiss Plaintiff's First Amended Complaint Against Them (hereinafter referred to as the "Logsdon Affidavit").
[32] *See* Defendant Texas Health Resources' Motion to Dismiss Plaintiff's First Amended Complaint under Rule 12(b)(3) of the Federal Rules of Civil Procedure and then in the Alternative, Motion to Transfer Venue Pursuant to 28 USC §1406 or §1404(a), p. 2, n. 1, 2, 3, 4, 5; p. 3, n. 6; pp. 78, n. 12.
[33] 371 F.3d 201 (5th Cir. 2004)(*Volkswagen I*), cited in Response, p. 4.

> When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour. *See* FED. R. CIV. P. 45(c)(1).[34]

The Brizius and Logsdon affidavits prove up the location of the respective Defendants,[35] the location of the place where these contracts were entered into and performed,[36] where payment was required to be made,[37] where all billing and remit data concerning these claims is located,[38] where the employees and witnesses involved are located,[39] and the fact that such witnesses are located well more than 100 miles from this venue.[40] As such, under *Volkswagen I*, transfer is appropriate.

Third, the "respect" to be shown a plaintiff's venue choice, as enunciated in *King Ranch, Inc. v. D.R. Horton, Inc.*[41] does not exist when the transferee venue is clearly more convenient than the venue chosen by plaintiff, is tempered by the strategic joining here by Plaintiffs of three Defendants having no relationship with each other, and is defeated by the 100 mile rule set forth in *Volkswagen I*.

---

[34] *Id.*, 371 F.3d at 204-205.
[35] Brizius Affidavit, ¶¶3-5, pp. 2-3; Logsdon Affidavit, ¶¶2, 4, pp. 1-3.
[36] Brizius Affidavit, ¶¶6, 7-11, pp. 3-4; Logsdon Affidavit, ¶¶8-17, pp. 4-6.
[37] Brizius Affidavit, ¶12, p. 4; Logsdon Affidavit, ¶18, p. 6.
[38] Brizius Affidavit, ¶20, p. 6; Logsdon Affidavit, ¶14, p. 5.
[39] Brizius Affidavit, ¶¶4, 5, 7 &20, pp. 2-3 & 6; Logsdon Affidavit, ¶2, 4-5 & 14; pp. 1-3, 5.
[40] Brizius Affidavit, ¶20, p. 6; Logsdon Affidavit, ¶14, p. 5.
[41] CIV. A. H-12-797, 2012 WL 1788178 (S.D. Tex. May 16, 2012), cited in Response, p. 4, attached thereto as Exhibit G.

Next, again unable to otherwise justify its venue scheme, Aetna resorts to the residence of Mr. Gibson,[42] who is neither a witness to be called to testify, nor the Attorney-In-Charge for these defendants. If the venue rules were to be construed as Aetna would have this Court construed them, any party could manufacture venue anywhere solely by virtue of the residence of any lawyer it decided to include on its legal team.[43]

Finally, Aetna attempts to convince this Court that Aetna's lawsuit "raises purely legal questions" with no need for "witnesses and evidence," and that even if needed, such data is electronic, and can be "readily" shipped several hundred miles across this great State. Of course, with respect to merely six lines of claims[44] included with Plaintiff's pre-suit claims spreadsheet, it seeks to do so in a Response supported with five affidavits from four witnesses attaching eight exhibits. Pre-suit, Methodist-Dallas provided Aetna with 1,977 lines of TPPA claims wherein it alleged it was paid, but paid late by Aetna.[45] Pre-suit, THR provided Aetna with 8,517 lines of TPPA claims wherein it alleged it was paid, but paid late by Aetna.[46] While these two pre-suit spreadsheets are only preliminary, if Aetna required five affidavits from four witnesses with respect to only six of those claims, imagine the potential witnesses needed for 10,494 claims

---

[42] *See* Motion, p. 5 ("Mr. Gibson represents Methodist and THR from this District . . .").
[43] Aetna's argument recalls the "public interest" factor discussed by the Fifth Circuit in *In re Volkswagen of America, Inc. (Volkswagen II)*, 545 F.3d 304, 318 (5th Cir. 2008) (The district court "stretches logic in a manner that eviscerates the public interest that this factor attempts to capture. The district court's provided rationale could apply virtually to any judicial district or division in the United States; it leaves no room for consideration of those actually affected-directly and indirectly-by the controversies and events giving rise to a case."). Imagine the evisceration of the Fifth Circuit's teachings in *Volkswagen I & II* that would occur if a party could create venue solely by virtue of the residence of the lawyer it chooses to hire to represent it in an upcoming legal proceeding.
[44] Response, Ex. A (Affidavit of Brian George), Ex. B (Affidavit of Sharon Lane); Ex. C (Affidavit of Jay Tidwell), Ex. D (Affidavit of Donna Lynch), Ex. E (Affidavit of Jay Tidwell).
[45] *See* Ex. D hereto - Declaration of Charles Brizius, dated January 3, 2014, attached as Ex. A to Methodist-Dallas' Motion to Remand, filed in *Methodist Hospitals of Dallas v. Aetna Health, Inc.*, Civil Action No. 3:13-CV-4992, In the Northern District of Texas – Dallas Division, ¶5, p. 2.
[46] *See* Ex. E hereto - Declaration of James D. Logsdon, dated January 3, 2014, attached as Ex. A to THR's Motion to Remand, filed in *Texas Health Resources v. Aetna Health, Inc.*, Civil Action No. 4:13-CV-1013, In the Northern District of Texas – Ft. Worth Division, ¶5, p. 2.

potentially in dispute here. As noted in *Volkswagen I*, it makes no sense to require THR and Methodist witnesses to travel more than 200 miles across the state to prove up TPPA claims arising from contracts with their situs in Ft. Worth and Dallas respectively.[47]

### III. CONCLUSION

Aetna concludes its response by stating "the medical claims at issue were submitted under ERISA plans administered here." While six of 10,494 claim lines may have involved claims with beneficiaries of ERISA plans administered here, the TPPA claim lines submitted by Defendants do not involve those plans. As held in *Lone Star*, they are state-law claims having nothing to do with the plans themselves, instead arising from a contractual right to be paid on time. As such, venue is not proper here under 29 U.S.C. §1132(a)(3).

Mr. Gibson's status as co-counsel cc'd on a pre-suit claims letter does not manufacture venue in the Southern District of Texas, despite his residence here.

Finally, Aetna's decision to corral into a common venue three entities with no prior relationship does not entitle it to deference.[48] Instead, its decision to do so justifies transfer under Rule 12(b)(3), and in the alternative, under Section 1404(a), since the documents and witnesses, the contracts, and the services and payment thereunder, are all based in the Northern District of Texas, in the Ft. Worth Division with respect to THR and in the Dallas Division with respect to Methodist-Dallas.

---

[47] It is noteworthy that Aetna's last citation is to *Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651 (Tex. 2013). Response, p. 5, n. 14. *Christus* requires a preferred provider contract to bring a TPPA claim. These defendants each have such a contract, entered into, performed and payable in the Northern District of Texas.

[48] Aetna clearly sued Medical Center ENT as a venue defendant to achieve venue against THR and Methodist-Dallas pursuant to 28 U.S.C. §1391(b)(1). It is noteworthy that in its two-page, two-line response to Medical Center ENT's Motion to Dismiss, Aetna admits that with conditions, it "has no objections to Medical Center ENT's dismissal." *See* Plaintiff Aetna Life Insurance Company's response to Medical Center ENT's Motion to Dismiss, pp. 2-3. Accordingly, in its Response to Defendants' venue motion here, it no longer argues for venue under 28 U.S.C. §1391(b)(1).

Methodist-Dallas' motion to dismiss this case under Rule 12(b)(3) should be granted. Alternatively, pursuant to Section 1404(a), this case should be transferred to the Northern District of Texas – Dallas Division.

Likewise, THR's motion to dismiss this case under Rule 12(b)(3) should be granted. Alternatively, pursuant to Section 1404(a), this case should be transferred to the Northern District of Texas – Ft. Worth Division.

Respectfully submitted,

By: /s/ Mikal C. Watts
Mikal C. Watts
Texas Bar No. 18215300
Fed. ID No. 12419
mcwatts@wattsguerra.com
WATTS GUERRA LLP
Four Dominion Drive,
Bldg. Three, Suite 100
San Antonio, Texas 78257
(210) 447-0500
(210) 447-0501 (fax)

ATTORNEY-IN-CHARGE FOR DEFENDANTS
TEXAS HEALTH RESOURCES &
METHODIST-DALLAS

Of counsel: LAW OFFICE OF JOSEPH V. GIBSON, PC
Texas Bar No. 24007236
Fed. ID No. 29963
Joseph V. Gibson, IV
10330 Lake Road, Building X
Houston, Texas 77070
(281) 370-1810
(281) 370-1811 (fax)

FRANCIS, ORR & TOTUSEK, LLP
James M. Orr
Texas Bar No. 15313600
Joe Don Ridgell
Texas Bar No. 24046716
Bobby D. Amick
Texas Bar No. 24059377
500 N. Akard, Suite 1830
Dallas, Texas 75201
(214) 740-4250
(214) 740-4266 (fax)

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing instrument was served electronically on this 13th day of January, 2014 to:

ATTORNEYS FOR PLAINTIFF

| | | |
|---|---|---|
| John B. Shely | - | jshely@andrewskurth.com |
| Kendall M. Gray | - | KendallGray@andrewskurth.com |
| Dimitri Zgourides | - | DZgourides@andrewskurth.com |
| Mitchell A. Reid | - | MitchReid@andrewskurth.com |

      By:   /s/ Mikal C. Watts
            Mikal C. Watts
            ATTORNEY-IN-CHARGE FOR
            DEFENDANTS TEXAS HEALTH
            RESOURCES & METHODIST-DALLAS