IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Aetna Life Insurance Company | § § | |
| Plaintiff | § § | |
| V. | § § | No. 4:13-cv-3412 |
| Methodist Hospitals of Dallas, *et al.* | § § § | |
| Defendants | § | |

# PLAINTIFF AETNA LIFE INSURANCE COMPANY'S SUR-RESPONSE TO JOINT MOTION TO ABSTAIN FROM EXERCISING JURISDICTION AND TO DISMISS FIRST AMENDED COMPLAINT [Dkt#13], JOINT RULE 12(b)(7) MOTION TO DISMISS [Dkt#14], AND MOTIONS TO DISMISS UNDER RULE 12(b)(3) AND ALTERNATIVELY TO TRANSFER VENUE [Dkt #15 & #16]

OF COUNSEL:
Dimitri Zgourides
Texas Bar No. 00785309
S.D. ID No. 16513
Kendall M. Gray
Texas Bar No. 00790782
S.D. ID No. 19148
Mitchell A. Reid
Texas Bar No. 00785309
S.D. ID No. 34728
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002
(713) 220-4200
(713) 220-4285 (Fax)

John B. Shely
Texas Bar No. 18215300
S.D. ID No. 7544
Andrews Kurth, L.L.P.
600 Travis Street, Suite 4200
Houston, TX 77002
713.220.4200
713.220.4285 (Fax)

ATTORNEY-IN-CHARGE FOR PLAINTIFF
AETNA LIFE INSURANCE COMPANY

Aetna files this omnibus sur-response to the Defendants' various replies,[1] all of which are premised on the erroneous (and unsupported) notion that Defendants can somehow limit Aetna's claims in this lawsuit to just "contractually-based, late-pay only" claims.[2] According to Defendants they "are not [ERISA] plan beneficiaries, and because they seek [prompt pay] penalties only for late-payment of claims Aetna decided to pay and did pay, [Aetna's] claims do not involve" the ERISA plans.[3] None of these assertions are true. Defendants cannot limit Aetna's pleading; this lawsuit involves *all* of the self-funded claims identified by Aetna, including claims that Aetna *denied*. Defendants stand in the shoes of ERISA beneficiaries because they agreed to (and did) obtain patient assignments, and Aetna is the proper plaintiff and an ERISA fiduciary. Because Aetna administered many of the plans here, in the Southern District, Aetna's federal claims cannot be ignored or shipped elsewhere as Defendants request.

## I.  ARGUMENT

### A. This lawsuit involves traditional ERISA parties and ERISA claims, including denied claims

Defendants' contention that they are not ERISA beneficiaries is belied by the express terms of Defendants' contracts with Aetna, which require Defendants to get assignments of benefits from their patients.

---

[1] Defendants are Methodist and THR. On January 17, 2014, the Court dismissed Medical Center ENT, which has unconditionally and irrevocably disavowed any claims against Aetna or its affiliates arising from the Texas Prompt Pay Act.

[2] Dkt#25 at 2.

[3] Dkt#23 at 2.

– 2 –

Section 4.5 of Methodist's Managed Care Agreement with Aetna (*see* Complaint, Exhibit A, p. 2) provides that the hospital "shall obtain" "signed assignments of benefits authorizing payment for Hospital Services to be made directly to Hospital."[4] Similarly, in section 4.11 of THR's Hospital Services Agreement with Aetna (*see* Amended Complaint, Exhibit C, p. 11), THR "represents" that it has "obtained signed assignments of benefits authorizing payment for Hospital Services to be made directly to Hospital."[5] Medical providers that have been assigned rights to payment by plan beneficiaries have standing under ERISA. *Dallas County Hosp. Dist. v. Assocs.' Health & Welfare Plan*, 293 F.3d 282, 286 (5th Cir. 2002).

Defendants obtained patient assignments (and thus stand in the shoes of plan beneficiaries) and sought Texas Prompt Pay Act penalties on claims submitted under self-funded ERISA plans that Aetna ultimately denied. For example:

---

[4] Dkt#1-1 (Compl., Ex. A) at 7 ("4.5 <u>Assignments of Benefits and Consents to Release of Medical Information</u>. Hospital shall obtain from all non-HMO Members to whom Hospital Services are provided: (a) signed assignments of benefits authorizing payment for Hospital Services to be made directly to Hospital; and (b) consents to the release of medical information to Company, Payors and their agents and representatives.") (underlining in original).

[5] Dkt#5-3 (Amended Compl., Ex. C) at 13 ("4.1 <u>Claim Submission and Payment</u>. 4.1.1 <u>Hospital Obligation to Submit Claims</u>. Hospital agrees to submit Clean Claims to Company or the applicable Plan Sponsor, for Hospital Services rendered to Members. To the extent that Hospital submits claim data related to a Member enrolled in a Government Program, Hospital certifies that any such data is accurate, complete and truthful. Hospital represents that, where necessary, it has obtained signed assignments of benefits authorizing payment for Hospital Services to be made directly to Hospital. . . .") (underlining in original).

– 3 –

- Methodist submitted claims to Aetna under an assignment of benefits by "K.P." Methodist seeks prompt pay penalties on a $186.00 charge that Aetna denied because it was specifically excluded from coverage under the terms of K.P.'s self-funded plan.[6]

- Methodist submitted claims to Aetna under an assignment of benefits by "M.O." Methodist seeks prompt pay penalties on $13,856.77 in charges that Aetna denied because the amount represented charges in excess of M.O.'s lifetime maximum under the terms of M.O.'s self-funded plan.[7]

- Methodist submitted claims to Aetna under an assignment of benefits by "D.B." Methodist seeks prompt pay penalties on $65.50 in charges that Aetna denied because the amount was specifically excluded from coverage under the terms of D.B.'s self-funded plan.[8]

Likewise, THR is seeking prompt pay penalties on claims that Aetna denied, including:

- THR submitted claims to Aetna under an assignment of benefits by "S.L." THR seeks prompt pay penalties on a $300.00 charge that Aetna denied because it was specifically excluded from coverage under the terms of S.L.'s self-funded plan.[9]

- THR submitted claims to Aetna under an assignment of benefits by "M.M." THR seeks prompt pay penalties on $5,673.75 in charges that Aetna denied because the terms of M.M.'s self-funded plan require pre-certification and THR did not obtain pre-certification.[10]

---

[6] Ex. (1)(D-1).

[7] Ex. (1)(D-2).

[8] Ex. (1)(D-3).

[9] Ex. (2)(D-1).

[10] Ex. (2)(D-2).

– 3 –

HOU:3393290.1

- THR submitted claims to Aetna under an assignment of benefits by "J.A." THR seeks prompt pay penalties on $1,160.00 in charges that Aetna denied because it was specifically excluded from coverage under the terms of J.A.'s self-funded plan.[11]

Contrary to Defendants' claims, therefore, they *are* seeking payment from Aetna on claims that were denied by Aetna for lack of coverage, not merely "paid late." And these six examples are just the tip of the iceberg.

### B. The Court has federal question jurisdiction over Aetna's claims

Defendants misstate the law as well as the facts. Defendants contend that Aetna's request for declaratory relief under ERISA § 502(a) does not trigger federal question jurisdiction, citing *Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439 (5th Cir. 2002). But the Fifth Circuit has expressly overruled *Bauhaus* in relevant part.[12] *See ACS Recovery Servs., Inc. v. Griffin*, 723 F.3d 518, 523 (5th Cir. 2013) (declaring that "[w]hatever the origin of this jurisdiction-based reasoning [in *Bauhaus*], it is inconsistent with Supreme Court precedent and the majority of sister circuits, for which the failure to state a claim cognizable under federal law is distinct from a holding that a court lacks subject matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case.") (italics in original).

"Subject matter jurisdiction is not implicated unless the claim is so insubstantial, implausible, foreclosed by prior decisions of the Supreme

---

[11] Ex. (2)(D-3).

[12] The issue in *Bauhaus* was whether "ERISA preempts the Mississippi law that requires court approval of the assignment of a minor's right to insurance proceeds." 292 F.3d at 441.

– 4 –

Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Id.* "[W]hether a claim for equitable relief under ERISA § 502(a)(3) has been stated is *within federal courts' jurisdiction* irrespective of the claim's ultimate merit." *Id.* (aligning with "at least five other circuits") (emphasis added). Aetna's burden at this juncture, therefore, is simply to show that it "stated a claim for equitable relief under ERISA § 502(a)(3)." *Id.*[13] As a "declaratory judgment is an equitable remedy," and the substance of Aetna's requested relief is equitable—as opposed to money damages—Aetna has met its burden. *Wacker v. Bisson*, 348 F.2d 602, 610 (5th Cir. 1965).[14]

In addition, the Court has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). Under the Act, federal jurisdiction in a declaratory judgment action exists if the defendant against whom the declaratory judgment is sought could have brought a coercive action in federal court based in part on federal law. *Transamerica Occidental Life Ins. Co. v. Digregorio*, 811 F.2d 1249, 1253 (9th Cir.1987) (holding that there was jurisdiction under the Act to hear an insurer's suit for declaration as to policy, because the defendant could have brought an

---

[13] Defendants also cite *New Orleans & Gulf Coast Railway Co. v. Barrois*, 533 F.3d 321 (5th Cir. 2008), for the proposition that there is no federal question jurisdiction under 28 U.S.C. § 1331 for a plaintiff who seeks declaratory relief on preemption grounds in a suit exclusively between private parties. *See* Dkt#24 at 2–3. However, *Barrois* is not an ERISA case; it involved a Louisiana statute that allowed land-locked parties to build private railroad crossings to reach public roads. *Id.* at 326–33.

[14] *See also Admin. Comm. of Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 302 F. Supp. 2d 1267, 1273–76 (D. Kan. 2004) (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), and holding that court had jurisdiction over plan administrator's action against beneficiary to enforce plan provisions).

ERISA action seeking recovery under the policy); *Conn. Gen. Life Ins. Co. of N.Y. v. Cole*, 821 F. Supp. 193, 197 (S.D.N.Y. 1993) (same).

Here, under their assignments, Defendants could have filed a coercive action under ERISA complaining about Aetna's alleged improper processing and disbursement of the claims for benefits at issue— including that Aetna failed to timely pay. *See* 29 U.S.C. §§ 1133, 1144(a); 29 C.F.R. § 2560.503-1. The Court thus has federal question jurisdiction.

### C. Venue is proper in the Southern District, as ERISA claims at issue were adjudicated here

Aetna's response to Defendants' venue motion established that venue is proper in this District because this is "the district where" the ERISA plans governing at least six of the medical claims underlying this lawsuit were "administered" pursuant to ERISA § 502(e)(2). 29 U.S.C. § 1132(e)(2). These six claims (and many others) were administered in Houston.[15]

In reply, Defendants contend that because they "are not plan beneficiaries, and because they seek penalties only for late-payment of claims," rather than denied claims, Aetna's claims do not involve the ERISA plans and so do not give rise to venue under ERISA § 502(e)(2).[16] According to Defendants, this Court should abstain from hearing this first-filed case in favor of the "contractually-based, late-pay only" lawsuits Defendants have filed in Dallas and Fort Worth against Aetna Health, Inc. Again, Defendants are playing games. Even Defendants' alleged "late-pay" self-funded claims were administered by Plan sponsors located

---

[15] *See* Dkt#20 at 2–3.

[16] Dkt#23 at 2–3.

– 6 –

here in the Southern District. Defendants' claims against Aetna Health arising out of insured employee benefits are irrelevant. Regardless, Aetna has proven that Defendants stand in the shoes of plan beneficiaries (through their assignments), and that they ***do*** seek penalties for denied claims. *See supra*.

Defendants also argue that venue should be transferred because of the supposed difficulties of litigating here, "200 miles across the state" from their home districts.[17] But other than establishing the mileage between Dallas and Houston, Defendants rely on nothing more than the conclusory statement that litigating in Houston "would be inconvenient," without any factual support for their theoretical "inconvenience."[18] Litigating in this District can hardly be an inconvenience for Mr. Gibson, one of Defendants' counsel, as he resides here.

Moreover, in a September 2013 letter that Mr. Watts, another of Defendant' counsel, sent to lawyers in the state (the letter received by Aetna's counsel is attached as exhibit 3), he boasted that "our Texas Prompt Pay Act recovery program" has "exploded," and "now blankets all regions across the entire state of Texas, as we have represented numerous medical providers in every geographical area of the state." The letter even included a map of Texas showing that Defendants' counsel "represent over 500 different medical entities across the great State of Texas," including 107 entities in Houston. Defendants' counsel went on to trumpet $865 million in damage "reports" generated, and "more than 20 lawyers and a staff of 124 professionals dedicated" to the firm's Prompt

---

[17] *Id.* at 9.

[18] Dkt#13-1 at 6, ¶20; Dkt#13-2 at 5, ¶14.

Pay Act "program." They can hardly be heard to complain that it is inconvenient to litigate in this District.

Defendants also tout the "100 mile rule"[19] set forth in *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004): "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." Defendants fail to consider Aetna's witnesses, who would have to travel more than 100 miles from Houston if Defendants' motion were granted. *See Peacock v. Pace Int'l Union Pension Fund Plan*, No. 3:06-0703, 2007 WL 4403689, at *11 (M.D. Tenn. Aug. 23, 2007) (observing that the "venue transfer provisions of Section 1404(a) is not meant merely to shift the inconvenience to the plaintiff," and holding that action for declaratory and injunctive relief arose under ERISA and should not be transferred) (citation omitted). Besides, except for trial (if any), there is not any need for Defendants to travel to this district—as pleaded by Aetna, this is a statutory interpretation case.

Moreover, *In re Volkswagen AG* involved products liability and negligence claims arising out of a vehicle accident in San Antonio, that "produced a wide array of witnesses," but which was filed nearly 400 miles away in Marshall, a district with "no factual connection" with the events of the case. *Id.* at 205 (recognizing that "there is absolutely nothing in this record to indicate that the people of Marshall, or even the Eastern District of Texas, have any meaningful connection or

---

[19] Dkt#23 at 6–7.

– 8 –
HOU:3393290.1

relationship with the circumstances of these claims.").[20] Here, in contrast, there *is* a factual connection: the ERISA plans at issue were administered in this District. Aetna's claims should stay here, where Aetna made many of the underlying decisions that Defendants challenge.

## II. CONCLUSION

Try as they have, Defendants cannot rewrite Aetna's pleadings. This lawsuit is not limited to "contractually-based, late-pay claims." Rather, it includes claims that Defendants submitted to Aetna under assignments, and which Aetna denied as not covered under the terms of the members' ERISA plans (which Aetna administered in this District). Aetna's claims are properly brought here in this Court, and should stay here. Defendants' motions should be denied.

---

[20] The Fifth Circuit also noted "there are no direct flights between San Antonio and Marshall. The city nearest to Marshall for purposes of traveling from San Antonio is Shreveport, Louisiana. There is, however, no direct service between San Antonio and Shreveport, thereby requiring passengers to make a stop either in Dallas/Fort Worth or Houston, which comprises a total air travel time of at least two and a half hours, in addition to the 40 mile drive from Shreveport to Marshall." *In re Volkswagen*, 371 F.3d at 204 n.3. There are, however, multiple direct flights between Dallas/Fort Worth and Houston. *See, e.g.*, www.southwest.com (showing 25 flights to Houston just on January 21, 2014) (last visited January 17, 2014).

– 9 –

Respectfully submitted,

ANDREWS KURTH LLP

| | |
|---|---|
| OF COUNSEL: | By: *s/ John B. Shely* |
| Dimitri Zgourides | John B. Shely |
| Texas Bar No. 00785309 | Texas Bar No. 18215300 |
| S.D. ID No. 16513 | S.D. ID No. 7544 |
| Kendall M. Gray | *jshely@andrewskurth.com* |
| Texas Bar No. 00790782 | 600 Travis, Suite 4200 |
| S.D. ID No. 19148 | Houston, Texas 77002 |
| Mitchell A. Reid | (713) 220-4200 |
| Texas Bar No. 00785309 | (713) 220-4285 (Fax) |
| S.D. ID No. 34728 | |
| ANDREWS KURTH LLP | ATTORNEY-IN-CHARGE FOR |
| 600 Travis, Suite 4200 | PLAINTIFF AETNA LIFE |
| Houston, Texas 77002 | INSURANCE COMPANY |
| (713) 220-4200 | |
| (713) 220-4285 (Fax) | |

### CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2014, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who area known "Filing Users":

    Mikal C. Watts
    William J. Maiberger
    Watts Guerra, LLP
    4 Dominion Drive
    Building 3, Suite 100
    San Antonio, Texas 78257

    Joseph V. Gibson, IV
    Law Office of Joseph V. Gibson, PC
    10330 Lake Road, Building X
    Houston, Texas 77070

                                    *John B. Shely*
                                     John B. Shely