IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AETNA LIFE INSURANCE COMPANY | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| V. | * | No. 3-14-CV-00347-M-BF |
| | * | |
| METHODIST HOSPITALS OF DALLAS | * | |
| AND TEXAS HEALTH RESOURCES | * | |
| | * | |
| Defendants | * | |

**DEFENDANTS' REPLY TO AETNA'S RESPONSE TO DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants METHODIST HOSPITALS OF DALLAS[1] and TEXAS HEALTH RESOURCES,[2] Cross-Movants herein, and file this their Reply to AETNA LIFE INSURANCE COMPANY[3]'s Response to Defendants' Cross-Motion for Summary Judgment. In support thereof, Cross-Movants respectfully show the Court as follows:

I.   **SUMMARY OF ARGUMENT**

First, Aetna contends that THR's and Methodist's reading of the Texas Prompt Pay Act[4] is "nothing more than a naked re-write of the statute without legal support."[5] Yet, while Methodist and THR invoke specific statutory provisions within the TPPA, Aetna invokes words and phrases used elsewhere in Chapter 1301, but not employed within the TPPA itself.

Aetna's response makes three distinct arguments, each of which fail.

---

[1] Hereinafter referred to as "Methodist."
[2] Hereinafter referred to as "THR."
[3] Hereinafter referred to as "Aetna."
[4] The Texas Prompt Pay Act, or "TPPA" is located in Subchapter C ("Prompt Payment of Claims") and Subchapter C-1 ("Other Provisions Relating to Payment of Claims") of Chapter 1301, and Subchapter J ("Payment of Claims to Physicians and Providers") of Chapter 843, of the Texas Insurance Code.
[5] Response, p. 2.

1

First, Aetna asks this court to pretend the payment deadlines of Section 1301.103 really apply only if a "health insurance policy" or "preferred provider benefit plan" is involved; but those words do not appear in the text of Section 1301.103. The legislature omitted these words from Section 1301.103 on purpose. It knew how to add them when it chose to do so – indeed, it did just that in Section 1301.104, concerning pharmacy claims. This Court should not accept Aetna's invitation to add words it favors to Section 1301.103, nor should it add these types of claims to a limited exclusions list provided by the Legislature in Section 1301.0041(c).

Second, Aetna argues that THR and Methodist "foist over thirteen pages of purported legislative history on the Court, most comprised of slippery statements by non-legislative bodies."[6] Yet, THR and Methodist merely offer the very types of legislative history previously employed by the Supreme Court of Texas when interpreting a statute.

Third, Aetna cites only one case not cited by it in earlier briefing[7] – a single inapposite decision from this Court.[8] Unlike here, that case – *United Healthcare Ins. Co. v. Levy* – involved a "coverage determination"[9] and thus, a "denial of coverage," which

---

[6] Response, p. 1.
[7] Aetna's Response first cites at pp. 1, 4, 5, *Am.'s Health Plans v. Hudgens*, 742 F.3d 1319 (11th Cir. 2014), previously cited in its Motion for Summary Judgment, p. 13; and responded to in the Response thereto. Second, Aetna cites at pp. 1, 4, *Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.*, 410 S.W.3d 843 (Tex. 2012), previously cited in its Motion for Summary Judgment, pp. 5, 16, 17; and responded to in the Response thereto, pp. 10-11. Third, Aetna cites at pp. 4-5, *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001), previously cited in its Motion for Summary Judgment, pp. 11-14; and responded to in the Response thereto, pp. 16-17. Fourth, Aetna cites at p. 5, *FMC Corp. v. Holliday*, 498 U.S. 52 (1990), previously cited in its Motion for Summary Judgment, pp. 5, 11; and responded to in the Response thereto, p. 6. Fifth, Aetna cites at p. 5, *Mayeaux v. La. Health Serv. & Indemn. Co.*, 376 F.3d 420 (5th Cir. 2004), previously referenced in the Response to Aetna's Motion for Summary Judgment, pp. 20-21. Sixth, Aetna cites at p. 6, *Aetna Health, Inc. v Davila*, 542 U.S. 200 (2004), previously cited in its Motion for Summary Judgment, pp. 11, 16, 17; and responded to in Response, p. 16. Seventh, Aetna cites at p. 6, *King v. Bluecross Blueshield of Ala.*, 439 F. App'x 386 (5th Cir. 2011), previously cited in its Motion for Summary Judgment, p. 11; and responded to in the Response thereto, p. 16.
[8] *United Healthcare Ins. Co. v. Levy*, 114 F. Supp. 2d 559 (N.D. Tex. 2000)(Lynn, J.).
[9] *Id.*, 114 F.Supp.2d at 560("This action stems from a person's complaint to the Texas State Board of Medical Examiners ('the Board') regarding *a coverage determination* made by a medical director...")(emphasis added); *Id.*, at 566 ("this Court is persuaded, and therefore holds, that the Board's

2

gave rise to ERISA preemption. Since this case concerns TPPA "late-pay only" allegations concerning clean claims that were deemed payable but paid late without seeking any additional benefits via an assignment of claims[10] -- claims that are not preempted -- *Levy* is inapposite.[11]

## II. ARGUMENTS AND AUTHORITIES

The statutory text and the legislative history both demonstrate that the claims made the subject of this motion are regulated by the TPPA. Furthermore, ERISA does not preempt these claims.

### A. Aetna Asks for Words and Phrases Not Found Within the TPPA

Aetna argues that the statute requires a "health insurance policy," and thus, a "preferred provider benefit plan." Aetna's argument fails for three reasons.

> 1. The phrases "insurance," "health insurance policy" and "preferred provider benefit plan" are not used within the relevant provisions of the TPPA.

Methodist and THR filed suit against Aetna, alleging a violation of the prompt pay deadlines within Section 1301.103, and seeking the consequent penalties and interest provided for in Section 1301.137. Neither Section 1301.103 nor Section 1301.137 requires "insurance;" indeed, the word "insurance" is never used in the TPPA.[12] Further, neither Section 1301.103 nor Section 1301.137 requires a "health insurance

---

action, initiated by Doe's *denial of coverage* under the definitions in the Plan, is preempted by ERISA and is thus impermissible.")(emphasis added).

[10] Ex. A (Appx. 003). *Erwin v. Texas Health Choice, LLC.*, 187 F. Supp. 2d 661, 663 (N.D. Tex. 2002)(Lynn, J.)("Plaintiff alleges that Defendants are liable for both common law and statutory bad faith 'by denying Mr. Erwin's claim for liver transplant services.'").

[11] *See Methodist Hospitals of Dallas v. Aetna Health Inc.*, No. 3:13-CV-4992-B, 2014 WL 3764879, at * 3 (N.D. Tex., July 30, 2014)(Boyle, J.)(remanding Methodist's TPPA claims filed by the undersigned against Aetna)("Methodist points out that its Original Petition was confined to late-paid claims rather than denials."); *Texas Health Resources v. Aetna Health, Inc.*, No. 4:13-CV-1013-A, 2014 WL 553263, at *2 (N.D. Tex., Feb. 12, 2014)(McBryde, J.)(remanding THR's TPPA claims filed by the undersigned against Aetna)("Plaintiff noted that its 'state-court pleading alleges only late-paid claims, and statutory provisions requiring the claim to be "payable."'").

[12] Ex. B (Appx. 009-48). The term "insurance" is not used in the TPPA, Subchapter C (§§ 1301.101-109) and Subchapter C-1 (§§ 1301.131-139). Only in its escheat provision, § 1301.137(l) is the word "insurance" used, but even that is used in the phrase, "Texas Health *Insurance* Risk Pool."

3

policy;" to the contrary, the phrase "health insurance policy" is never used in relevant portions of the TPPA.[13] Finally, neither Section 1301.103 nor Section 1301.137 requires a "preferred provider benefit plan;" in fact, the phrase "preferred provider benefit plan" is never used in the TPPA with respect to clean claims submitted by a preferred provider.[14] Instead, the payment deadlines of Section 1301.103 require only that a *preferred provider* submit *clean claims* to an *insurer*, as defined in Section 1301.001(5), and imposes penalties and interest in Section 1301.137 if such insurer fails to timely pay the claims, while also permitting recovery of reasonable attorneys' fees and court costs in Section 1301.108.

    2.    <u>The phrases "insurance," "health insurance policy" and "preferred provider benefit plan" are used in other regulations within Chapter 1301</u>

Chapter 1301 does use the phrases "insurance," "health insurance policy" and "preferred provider benefit plan" with respect to its regulations found outside the TPPA.[15] In the broader context of Chapter 1301 as a whole, the use of those terms in Section 1301.0041(a) is not mere surplusage. But those terms are simply not used within the TPPA, which governs the claims at issue here.

---

[13] Ex. C (Appx. 049-88). The phrase "health insurance policy" is used only once in the TPPA, Subchapter C (§§ 1301.101-109) and Subchapter C-1 (§§ 1301.131-139); only in Section 1301.135(b) relating to preauthorization of services is the phrase found.

[14] Ex. D (Appx. 089-128). The phrase "preferred provider benefit plan" is used only once in the TPPA, Subchapter C (§§ 1301.101-109) and Subchapter C-1 (§§ 1301.131-139); only in Section 1301.104 relating to pharmacy claims is the phrase found.

[15] *See* Exs. B, C & D (revealing in red each time such phrases are utilized respectively).

4

For example, when the Legislature wanted to limit its prompt payment deadlines for clean claims submitted by pharmacies to those claims submitted "under a preferred provider benefit plan," it said so in Section 1301.104:

> Sec. 1301.104.  DEADLINE FOR ACTION ON PHARMACY CLAIMS; PAYMENT.
> (a) An  insurer, or a pharmacy benefit manager that administers pharmacy claims for the insurer under a *preferred provider benefit plan*, that affirmatively adjudicates a pharmacy claim that is electronically submitted shall pay the total amount of the claim through electronic funds transfer not later than the 18th day after the date on which the claim was affirmatively adjudicated.
> (b)  An insurer, or a pharmacy benefit manager that administers pharmacy claims for the insurer under a *preferred provider benefit plan*, that affirmatively adjudicates a pharmacy claim that is not electronically submitted shall pay the total amount of the claim not later than the 21st day after the date on which the claim was affirmatively adjudicated.

However, when it wanted its prompt payment deadlines to apply to all clean claims submitted by a preferred provider, like Methodist and THR, to a payor, like Aetna, it did not limit Section 1301.103, as it had done above:

> Sec. 1301.103.  DEADLINE FOR ACTION ON CLEAN CLAIMS.  Except as provided by Sections 1301.104 and 1301.1054, not later than the 45th day after the date an insurer receives a clean claim from a preferred provider in a nonelectronic format or the 30th day after the date an insurer receives a clean claim from a preferred provider that is electronically submitted, the insurer shall make a determination of whether the claim is payable and:
> (1)  if the insurer determines the entire claim is payable, pay the total amount of the claim in accordance with the contract between the preferred provider and the insurer;
> (2)  if the insurer determines a portion of the claim is payable, pay the portion of the claim that is not in dispute and notify the preferred provider in writing why the remaining portion of the claim will not be paid; or
> (3)  if the insurer determines that the claim is not payable, notify the preferred provider in writing why the claim will not be paid.

The Legislature knows how to use words and phrases in particular statutory provisions, and knows how to exclude them. This Court should conclude that "every word excluded from a statute must also be presumed to have been excluded for a purpose."[16] Thus, this Court should refuse Aetna's invitation to add the phrase "preferred provider benefit plan" or "health insurance policy" to Section 1301.103.

    3.    <u>Subsequent Enactments of Section 1301.0041(c) Demonstrate that the Clams Involved Here are Subject to the TPPA</u>

In 2011, the Legislature added Section 1301.0041(c), providing:

(c)    This chapter does not apply to:

    (1)    the child health plan program under Chapter 62, Health and Safety Code; or

    (2)    a Medicaid managed care program under Chapter 533, Government Code.[17]

Aetna's argument that Section 1301.0041(a) limits the TPPA's application to fully-funded plans impermissibly renders the exclusion of Children's Health Insurance Program ("CHIP") and Managed Medicaid claims in Section 1301.0041(c) complete surplusage. Neither CHIP nor Managed Medicaid involves a fully-funded plan. CHIP is not a fully-funded program; rather, it is funded by the states, and by the federal government through federal matching funds and administered by insurance companies like Aetna.[18] Likewise, under managed Medicaid, Aetna (as a managed care organization) agrees to provide Medicaid benefits to people in exchange for a monthly payment from the state.[19]

---

[16] *In re Bell*, 91 S.W.3d 784, 790 (Tex. 2002).
[17] TEX. INS. CODE § 1301.0041(c), Acts 2011, 82nd Leg., R.S., Ch. 288, Sec. 4, eff. September 1, 2011.
[18] http://www.medicaid.gov/Medicaid-CHIP-Program-Information/By-Topics/Childrens-Health-Insurance- Program-CHIP/Childrens-Health-Insurance-Program-CHIP.html.
[19] http://www.medicaid.gov/Medicaid-CHIP-Program-Information/By-Topics/Delivery-Systems/Managed-Care/Managed-Care.html

If Section 1301.0041(a) limited the TPPA's application to fully-funded plans - as Aetna would have this Court believe - then the Legislature's inclusion of Section 1301.0041(c) would have been unnecessary. This conclusion violates the basic tenet of statutory construction that "every word of a statute must be presumed to have been used for a purpose."[20] To accept Aetna's view of Section 1301.0041(a), one must conclude the exclusions listed in Section 1301.0041(c) had no purpose.

In sum, only the words chosen by the Legislature in the specific provisions of Sections 1301.103 and 1301.137 within the TPPA control here. These specific provisions within the TPPA prevail over a general provision located outside the TPPA and beginning with the following eight words - "Except as otherwise specifically provided by this Chapter."

### B. The Legislative History Demonstrates that the TPPA Applies to these Claims

In their cross-motion, Methodist and THR demonstrate the Legislature's intent that the TPPA applies to the claims subject to this Motion. Aetna's sole response is two lines of text in its Response, complaining that Methodist and THR "foist over thirteen pages of purported legislative history on the Court…"[21]

The Code Construction Act, however, provides that one may consider legislative history when construing a statute, whether or not a statute is ambiguous.[22] Accordingly, the Supreme Court of Texas has repeatedly "foisted" legislative history upon parties in its efforts to ascertain legislative intent based upon the Texas Code Construction Act.[23]

---

[20] *In re Bell*, 91 S.W.3d 784, 790 (Tex. 2002).
[21] Response, p. 1.
[22] TEX. GOV'T CODE § 311.023(3).
[23] Ex. E (Appx. 129-30) – Texas Supreme Court cases invoking the Texas Code Construction Act before turning to legislative history to ascertain legislative intent.

The fact remains that the Supreme Court of Texas has repeatedly utilized the same 10 different types of legislative history offered by THR here:

1. Predecessor statutes, and amendments thereto;[24]

2. testimony in public hearings conducted before a bill is introduced;[25]

3. Interim Committee reports to the Legislature;[26]

4. Comparison of Bill originally filed with committee amendments thereto;[27]

5. Contemporaneous statements by bill proponents and opponents;[28]

6. Testimony given during committee hearings;[29]

7. Bill Analyses by the House or the Senate;[30]

8. Statements and amendments made during floor debates on the bill;[31]

---

[24] Brief in Support of Cross Motion for Summary Judgment, p. 6-7. *See Garza v. TABC*, 89 S.W.3d 1, 4 (Tex. 2002) *overruling Cook v. Spears*, 524 S.W.2d 290, 292 (Tex. 1975)(reviewing predecessors to statute and subsequent amendments thereto).

[25] Brief in Support of Cross Motion for Summary Judgment, pp. 7-9. *See Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 527, & n.23 (Tex. 1995)("Legislative history confirms the Legislature's desire to produce a more objective system. John Lewis, a workers' compensation expert retained by the Joint Select Committee to evaluate the former system, testified before the Legislative Oversight Committee on Workers' Compensation as follows . . ." (citing Meeting of the Legislative Oversight Committee on Workers' Compensation, April 10, 1989, Tape 4 at 2–3)); *Beck v. Beck*, 814 S.W.2d 745, 748 (Tex. 1991)("The legislative history of the 1980 amendment is enlightening. In a public hearing on House Joint Resolution 54, 4 held on February 28, 1979, before the House Committee on Constitutional Amendments, one witness testified . . ." & "other testimony during the public hearing . . . indicates that the legislators sought to . . .").

[26] Brief in Support of Cross Motion for Summary Judgment, pp. 7-9. *See* Ex. F (Appx. 131) – Texas Supreme court cases utilizing interim committee reports to the legislature to ascertain legislative intent.

[27] Brief in Support of Cross Motion for Summary Judgment, pp. 9-10. *See* Ex. G (Appx. 132) – Texas Supreme court cases comparing originally filed bill with committee amendments to ascertain legislative intent.

[28] Brief in Support of Cross Motion for Summary Judgment, pp. 10-11. *See* Ex. H (Appx. 133) – Texas Supreme Court cases analyzing contemporaneous statements by bill proponents and opponents to ascertain legislative intent.

[29] Brief in Support of Cross Motion for Summary Judgment, pp. 12-16. *See* Ex. I (Appx. 134-35) – Texas Supreme Court cases analyzing committee hearing testimony to ascertain legislative intent.

[30] Brief in Support of Cross Motion for Summary Judgment, pp. 6, 16. *See* Ex. J (Appx. 136-38) – Texas Supreme Court cases reviewing House or Senate bill analyses to ascertain legislative intent.

[31] Brief in Support of Cross Motion for Summary Judgment, pp. 11-12, 17-18. *See* Ex. K (Appx. 139) – Texas Supreme Court cases reviewing floor debate statements and amendments to ascertain legislative intent.

9. Conference Committee reports;[32] and

10. Subsequent Legislative Action revising the statute.[33]

The Supreme Court of Texas has utilized each and every type of legislative history offered by THR. Aetna offers nothing. It can offer nothing, because the intent of the Legislature is that the claims THR and Methodist have filed against Aetna be subject to the prompt pay requirements of the TPPA.

### C. Aetna's Preemption Argument Ignores Fifth Circuit Precedent

Aetna contends that "the Eleventh Circuit correctly rejected"[34] the second prong of the Fifth Circuit's two-pronged test for express preemption. In truth, *Hudgens* does not meet the Fifth Circuit's two-pronged test for express preemption.[35] As referenced previously, Aetna can provide no case in the Fifth Circuit dispensing with *Weaver's* requirement that parties on "both sides of the 'v'" be ERISA entities.[36] In any event, a third-party healthcare provider's suit brought based upon the contractual privity it enjoys with a payor, rather than as an assignee of a plan participant's claims, does not directly affect the relationship among the traditional ERISA entities.

---

[32] Brief in Support of Cross Motion for Summary Judgment, pp. 18. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 & n.6 (Tex. 2008)(reviewing conference committee report); *State v. Preslar*, 751 S.W.2d 477, 481-82 (Tex. 1988)(referencing the conference committee report).

[33] Brief in Support of Cross Motion for Summary Judgment, pp. 4-5. *See Galbraith Eng. Cons., Inc. v. Puchucha*, 290 S.W.2d 863, 868 (Tex. 2009)(reviewing original statute and subsequent amendments thereto); *Old American County Mutual Fire Ins. Co. v. Sanchez,* 149 S.W.3d 111, 117 (Tex. 2004)(referencing original statute, and later amendments where "the Legislature broadened it."); *In re Canales*, 52 S.W.3d 698, 703 & nn.18-20 (Tex. 2001)(referencing original statute and amendments thereto); *Cash America Int'l v. Bennett*, 35 S.W.3d 12, 17 (Tex. 2000)("Recent legislative actions also strongly suggest that . . . . In its last session, the Legislature amended section 371.167(a) to provide . . . ."); *State v. Houdaille Industries, Inc.*, 632 S.W.2d 723, 724-25 (Tex. 1982)(analyzing original statute and subsequent amendments thereto).

[34] Response, p. 5.

[35] Methodist and THR note this Court's familiarity with this two-pronged test. *See* Ex. L (Appx. 141) – *Moreno v. Hospitality Group, LLC*, No. 3:06-CV-2247-M, 2007 WL 518581, at *3 (N.D. Tex., Feb. 20, 2007)(Lynn, J.).

[36] Aetna's invocation of *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004) falls short because *Davila* involved only complete preemption, *id.* at 221, rather than express preemption, and because the Fifth Circuit has held that with respect to late-pay claims only, *Davila* does not deliver preemption of the TPPA. *Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 532 (5th Cir. 2009).

Moreover, Aetna's contention that "the claims-processing and time-period requirements of ERISA," 29 C.F.R. 2560.503.1, are "in conflict with the TPPA"[37] is wholly without merit because that section "sets forth minimum requirements for employee benefit plan procedures pertaining to claims *for benefits by participants and beneficiaries*. . . . "[38] As third-party medical providers, neither Methodist nor THR is a "participant," nor a "beneficiary" of an ERISA plan.[39] Further, Methodist and THR are not seeking any additional benefits from any plan. The only damages sought by Defendants are for statutory penalties and interest with respect to those claims Aetna determined were payable and paid, but paid late. Consequently, this provision from the Code of Federal Regulations does not apply to Methodist and THR, and does not serve to provide Aetna with the ERISA preemption is seeks here.

Respectfully submitted,

By: /s/ Mikal C. Watts
Texas Bar No. 20981820
Fed. ID No. 12419
mcwatts@wattsguerra.com
WATTS GUERRA LLP
Four Dominion Drive,
Bldg. Three, Suite 100
San Antonio, Texas 78257
(210) 447-0500
(210) 447-0501 (fax)

ATTORNEY-IN-CHARGE FOR
DEFENDANTS METHODIST
HOSPITALS OF DALLAS AND
TEXAS HEALTH RESOURCES

---

[37] Response, p. 6.
[38] 29 C.F.R. § 2560.503-1(a)(2013)(emphasis added).
[39] *Weaver v. Employers Underwriters, Inc.*, 13 F.3d 172, 176-77 (5th Cir. 1994)("[H]e is not an ERISA 'participant.' Nor is Weaver an ERISA 'beneficiary.'").

Of counsel:   LAW OFFICE OF JOSEPH V. GIBSON
Joseph V. Gibson, IV
Texas Bar No. 24007236
jgibson@jvglaw.com
17618 Wagner Point Court
Tomball, Texas 77377
(281) 370-1810
(281) 370-1811 (fax)

FRANCIS, RIDGELL & TOTUSEK, LLP
Joe Don Ridgell
Texas Bar No. 24046716
jdridgell@fotllp.com
Bobby D. Amick
Texas Bar No. 24059377
bamick@fotllp.com
500 N. Akard, Suite 1830
Dallas, Texas 75201
(214) 740-4250
(214) 740-4266 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served electronically on this 4th day of September, 2014 to:

ATTORNEYS FOR PLAINTIFF

John B. Shely         -   jshely@andrewskurth.com
Kendall M. Gray       -   KendallGray@andrewskurth.com
Dimitri Zgourides     -   DZgourides@andrewskurth.com
Mitchell A. Reid      -   MitchReid@andrewskurth.com
Mark A. Shoffner      -   markshoffner@andrewskurth.com

By:   /s/ Mikal C. Watts
ATTORNEY-IN-CHARGE FOR
DEFENDANTS METHODIST
HOSPITALS OF DALLAS AND
TEXAS HEALTH RESOURCES