IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AETNA LIFE INSURANCE COMPANY | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| V. | * | No. 3:14-CV-00347-M |
| | * | |
| METHODIST HOSPITALS OF DALLAS | * | |
| *et al.* | * | |
| | * | |
| Defendants | * | |

**DEFENDANTS' SUPPLEMENTAL BRIEF CONCERNING
JOINT RULE 12(b)(7) MOTION TO DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT:

The Court's December 11, 2014 Order (Dkt #56) frames the central issue of the inquiry in this case under Rule 12(b)(7): "Must Aetna Health, Inc., be a party to this action?" In scores of Prompt Pay cases and arbitral proceedings, Aetna has never disputed that claims brought against Aetna Health, Inc., under either Chapter 843 or Chapter 1301 of the Texas Insurance Code, are claims brought against the proper party. Only now, when the existence of federal subject matter jurisdiction turns on the need to establish diversity, has Aetna attempted to argue that Aetna Life Insurance Company is the only party answerable to prompt pay claims brought under Chapter 1301. That effort to create federal jurisdiction should be rejected. Aetna Health, Inc., a Texas entity, is a necessary party in this proceeding under both the terms of the contract between the parties and controlling Texas law; it's required presence destroys diversity. Further, Aetna's efforts to manufacture a federal question by anticipating a defense to the

state court proceedings and re-couching that defense as a justification for declaratory relief have been squarely rejected by other courts in similar circumstances. The motion to dismiss should be granted.

I. **The Standard for Dismissals Under Rule 12(b)(7) and the Identification of Indispensible Parties Under Rule 19(b)**

Rule 12(b)(7), of course, contemplates dismissal of actions where the claimant has failed to join required parties where the joinder of such a necessary party would destroy the court's jurisdiction if the case cannot proceed in equity and good conscience among the existing parties.[1] The inquiry under Rule 12(b)(7) is guided almost exclusively by the parameters of Rule 19, which require an initial determination that the absent party is necessary to the litigation.[2] Where an absent party is necessary, but its joinder would destroy the court's jurisdiction, the court must consider "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed;" that inquiry is guided by, among other things, "whether a judgment rendered in the person's absence would be adequate."[3]

II. **Aetna Health is an Indispensible Party in the Providers' TPPA Actions Arising from Preferred Provider Plans Under Controlling Principles of Texas Law and the Terms of the Parties' Contracts**

The Texas Supreme Court has made clear that privity of contract is an absolute prerequisite for pursuit of any claim brought under the Texas Prompt

---

[1] *See Ameriprise Fin., Inc. v. Bailey*, 944 F. Supp. 2d 541, 544-45 (N.D. Tex. 2013).
[2] *Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256, 260 (N.D. Tex. 2014).
[3] *See Ameriprise Fin., Inc.*, 944 F.Supp.2d at 545.

Pay Act.[4] When several hospitals[5] sought to recover statutory prompt pay penalties from Aetna, Inc. and Aetna Health, Inc. based upon bills that were not timely paid, the Aetna entities argued that they bore no liability under the Act because they were not in contractual privity with the hospitals.

Pointing to the "plain language" of the statute, the Supreme Court of Texas agreed, explaining that an HMO was "only required to pay within the 45-day deadline 'the total amount of the claim *in accordance with the contract between the physician or provider and the health maintenance organization* . . . .'"[6] Similarly, the Court noted that the penalty provisions of the TPPA, which index the payor's penalty to the "contracted rate," showed that "there must be a direct HMO-provider contract" to sustain a prompt pay claim under the Texas statute. The Court held that "a violation of the Prompt Pay Statute presumes a direct HMO-provider contract between Aetna and the hospitals." Therefore, the gravamen of a provider's right to bring a TPPA claim against an HMO is the existence of a contract between that provider and the defendant; since there was no such contract, the Supreme Court held that "Aetna could not have violated the statute."

The import of *Christus* in the current case lies in the imposition of that requirement. Under the general Texas law of contracts, "a party must show

---

[4] *See Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 654 (Tex. 2013).
[5] The hospitals in that case had entered into contracts with a management services provider that was an affiliate of a third party administrator with whom the Aetna entities had contracted to administer a Medicare plan provided by Aetna.
[6] *Id.* at 654 (emphasis in original). The decision quotes the statutory language as presented in Session Laws; that language is now codified at Section 843.338(1) of the Texas Insurance Code. *See* TEX. INS. CODE § 843.338(1).

either privity or third-party beneficiary status in order to have standing to sue" based upon the contract.[7] A bankruptcy court in this district has explained that "privity is defined as a mutual or successive relationship to the same right of property."[8] In the more specific context of contract law, privity of contract means "the relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so."[9] *Christus*, then, requires that a provider that might bring a claim under the TPPA demonstrate at the threshold that there is privity of contract with the particular payor who failed to remit timely payment of adjudicated claims.

While *Christus* focused on the construction of the TPPA provisions applicable to HMO contracts (found in Chapter 843 of the Insurance Code), its conclusion is equally applicable to PPO contracts governed by Chapter 1301. The PPO statute identically imposes a timetable for the payment of claims "in accordance with the contract between a preferred provider and the insurer," and its penalty provision makes the monetary penalties for non-compliance determinable based, in part, upon the "contracted rate" applicable to the late-paid claims.[10] That is, the very statutory language that compelled the recognition

---

[7] *Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 387 (Tex. App.—Dallas 2012, no pet.).

[8] *In re e2 Communications, Inc.*, 354 B.R. 368, 381 (N.D. Tex. Bankr. 2006)(citing *C&C Partners v. Sun Expl. & Prod. Co.*, 783 S.W.2d 707, 722 (Tex. App.—Dallas 1989, writ denied)); see also "Privity," BLACK'S LAW DICTIONARY (9th ed. 2009)(defining "privity" to mean "the connection or relationship between two parties, each having a legally recognized interest in the same subject matter.").

[9] *West Houston Airport, Inc. v. Millennium Ins. Agency, Inc.*, 349 S.W.3d 748, 752 (Tex. App.—Houston [14th Dist.] 2011, pet. denied)(quoting "Privity of Contract," BLACK'S LAW DICTIONARY (9th ed. 2009)).

[10] TEX. INS. CODE §§ 1301.103(1), 1301.137.

4

of the privity requirement in *Christus* exists in Chapter 1301, demonstrating that the privity requirement applies with equal force to PPO claims.

The resolution of the court's question concerning the need to join Aetna Health, Inc. as a required party in this action depends upon the governing contracts. The Hospital Services Agreement (the "Agreement") in this case was entered into by THR and Aetna Health Inc. ("Aetna Health") "on behalf of itself and its *applicable Affiliates*." Throughout the Agreement, Aetna Health and its "applicable affiliates" is referred to collectively as "Company." The Agreement defines "affiliate" as "[a]ny corporation, partnership, or other legal entity (including any Plan) directly or indirectly owned or controlled by, or which owns or controls, or which is under common ownership or control with Company." The affiliate listing provided with the contract lists Aetna Life Insurance Company as an affiliate, but nowhere else in the contract is there any hint that Aetna Life Insurance Company is an affiliate whose existence is germane to the contract signed by the providers.

The fact that the providers' contractual relationship was one with Aetna Health, Inc. is further confirmed through testimony adduced in the depositions of two Aetna agents.[11] David Roberts admitted during his deposition that Aetna

---

[11] Mindful of the Court's admonition, Defendants seek to attach inter alia relevant excerpts of the depositions of David Roberts and Robyn Consiglio, as well as documents referenced in those depositions, to aid the Court's efforts to resolve the 12(b)(7) motion as exhibits to the Declaration of William J. Maiberger, Jr. Defendants filed an appropriate motion for leave to file the referenced attachments prior to the filing of this supplemental brief. Although Aetna has filed a response to that motion for leave objecting to such attachments, Defendants maintain that they are relevant to the Court's inquiry in this Matter.

Health, Inc. "is the legal entity" that Defendants contracted with in the Agreement, and acknowledged that he was not aware of any other Aetna entity with which THR had a "direct contractual relationship."[12] In fact, Mr. Roberts testified that THR has a contract with Aetna Health, Inc. and submits claims for payment to Aetna Health, Inc. pursuant to that contract.[13] This is wholly consistent with the express language of the contract, which requires the providers to "submit Clean Claims to Company or the applicable Plan Sponsor," and directs that any notices given by the providers under the terms of the contract must be delivered exclusively to "Aetna Health, Inc." In reiterating that the relevant agreement is between THR and Aetna Health, Inc., Mr. Roberts added that the involvement of affiliate (including Aetna Life Ins. Co.), is a matter decided solely by Aetna Health and that affiliate, with the provider having no say or involvement.[14] Robyn Consiglio added that the payment information applicable to THR and the other providers who are Defendants in this action would be included in explanations of benefits ("EOB's").[15] Mr. Roberts affirmatively stated that the identity of the entity that pays PPO claims under the Defendants' contracts would be included in these EOB's.[16] Defendants have furnished the Court with several exemplar EOB's;[17] none of those indicate that Aetna Life Insurance Company played any part in the processing of PPO claims.

---

[12] *See Maiberger Dec.* at 1, ¶ 4 & Ex. A, Depo. of D. Roberts at 9:25-10:3, 19:1-7.
[13] *See id* at Depo. of D. Roberts at 11:17-21, 12:4-8, 17:25-18:5.
[14] *See id.* at Depo. of D. Roberts at 39:3-40:22.
[15] *See Maiberger Dec.* at 1, ¶ 5 & Ex. B, Depo. of R. Consiglio at 27:10-22.
[16] *See Maiberger Dec.* at 1, ¶ 4 & Ex. A Depo. of D. Roberts at 13:10-14.
[17] *See Maiberger Dec.* at 1-2, ¶ 6 & Ex. C.

Texas law requires privity of contract between the parties to a dispute arising under the TPPA. Aetna Health, Inc. is, both contractually and factually, the party with whom Defendants are in contractual privity. As such, if Defendants are to recover the penalties available under the TPPA, they must bring their action against Aetna Health, Inc. Under the controlling terms of Rule 19(a), Aetna Health, Inc. is a required party; it must be a party to this action and the others of the Defendants' TPPA suits.

As noted above, Aetna has had ample opportunity in the pending state court action to contend that only Aetna Life Insurance Co. can be liable for prompt pay violations with respect to claims submitted under PPO plans. It has not, however, challenged the fact that the providers have sought the TPPA's remedies for late paid PPO claims against Aetna Health, Inc.[18] As a matter of Texas sate court procedure, a defect of parties – which refers to joinder problems involving necessary or indispensible parties – must be raised by a verified plea.[19] Aetna Health, Inc. has not filed any such plea in the state court proceedings. It likewise has not sought to join Aetna Life Insurance Company in the state court action. And it has not sought any sort of adjudication – by, for instance, a motion for summary judgment – that Aetna Health, Inc. cannot be liable for PPO claims under the parties' contract. Thus, by its course of conduct in the state court proceedings, Aetna has acted in a manner that is consistent with an

---

[18] *See Maiberger Dec.* at 2, ¶ 7 & Ex. D.
[19] *See CHCA East Houston, L.P. v. Henderson*, 99 S.W.3d 630, 633 (Tex. App.—Houston [14th Dist.] 2003, no pet.)(citing *Allison v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 703 S.W.2d 637, 638 (Tex. 1986)); TEX. R. CIV. P. 93(4).

understanding that Aetna Health, Inc. is properly liable for the prompt pay violations at issue in the state court action.

Finally, the Court asks whether the definition of "insurer" under the TPPA encompasses Aetna Health, Inc. and Aetna Life Insurance Company. Section 1301.001(5) defines an insurer to include "a life, health, and accident insurance company, health and accident insurance company, health insurance company, or other company operating under Chapter 841, 842, 884, 885, 982, or 1501, that is authorized to issue, deliver, or issue for delivery in this state health insurance policies."[20] By virtue of the fact that it entered into a contract with Defendants, as well as the express terms of the Hospital Services Agreement itself, there can be no doubt that Aetna Health, Inc. meets that definition of insurer.

### III. This Court Does Not Have Federal Question Jurisdiction Over this Case.

The second category of questions raised by the Court concerns the ability of Aetna Life Insurance Company to assert federal preemption arguments (based on ERISA) in a declaratory judgment action. As the Fifth Circuit has observed, the Declaratory Judgments Act does not confer an independent ground for jurisdiction; thus, merely seeking declaratory relief is insufficient to demonstrate the existence of a federal question.[21] Accordingly, Aetna's complaint asserts a federal question only where its statement of its own cause of action shows that it is based upon federal law.[22] Generally, anticipated defenses like those based upon federal preemption of state law, do not provide a basis for federal question

---

[20] TEX. INS. CODE § 1301.001(5)
[21] *TTEA v. Ysleta del Sur Pueblo*, 181 F.3d 676 (5th Cir. 1999)
[22] *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995).

8

jurisdiction.[23] That general principle applies with equal force where a nominal defendant becomes a plaintiff by seeking relief that is intrinsically defensive through requests for declaratory relief.[24] While courts have departed from that principle where the suit seeks injunctive or declaratory relief against state agencies or officials, no such exception has been generally recognized where the suit involves only private parties and no state action.[25] Here, the complaint seeks declaratory relief as to a nominal defense (preemption) to a state law claim (TPPA violations); Aetna cannot gerrymander federal jurisdiction where there would have been no basis for finding the existence of a federal question had the providers brought this action.

In a similar vein, the Court also asks the parties to consider the potential applicability of 29 U.S.C. §§ 1132(a), granting limited rights to bring civil enforcement actions under ERISA, and 1144(a), affording preemptive effect to ERISA in some circumstances, in this context. Simply stated, these sections do not provide a separate basis for federal question jurisdiction over Plaintiff's declaratory judgment action in this case.

Ultimately, the inquiry boils down to whether any part of 29 U.S.C. § 1132 – and most likely subsection (a)(3)(B)(ii) – confers federal question jurisdiction here. That section provides, in part, that a civil action may be brought "by a participant, beneficiary, or fiduciary . . . to enforce any provisions of this

---

[23] *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008).
[24] *Barrois*, 533 F.3d at 328.
[25] *Union Pac. R. Co. v. Harris County, Tex.*, 790 F. Supp. 2d 568, 577 (S.D. Tex. 2011)

9

subchapter or the terms of the plan."[26] However, section 1132(a)(3)(B)(ii) does not give Aetna a right to preemptively seek declaratory relief against a potential suit in order to justify federal jurisdiction on the basis that the declaration it seeks simply concerns the enforcement of the preemption provision of the statute.[27] Indeed, the district court in *Mayo* held expressly that a preemption defense does not confer federal question jurisdiction under section 1132(a)(3)(B)(ii).

That rationale makes perfect sense as applied to this case. In essence, Aetna simply beat THR and Methodist to the courthouse when it filed this declaratory judgment action. In doing so, Aetna simply sought affirmative adjudication of a preemption *defense* it would have asserted had Defendants filed their TPPA claims in state court first. But the defensive use of a declaratory judgment action in order to establish a preemption defense cannot confer federal question jurisdiction under section 1132(a)(3)(B)(ii).

**IV.** **The Providers Have Not Asserted Any Prompt Pay Claims Arising from Assignments of Rights by Patients to the Providers and Have Stipulated that They Will Not Bring Such Claims; Since There is No Actual Controversy, Aetna Lacks Standing to Seek Declaratory Relief as to Claims Arising from Assignments**

Finally, the Court's order directs the parties to address any other issues raised in the December 11, 2014 call with the Court. Of the questions posed by the Court to counsel before that call, the only one unaddressed by the foregoing discussion is whether there has been a formal waiver or withdrawal by Defendants of any TPPA claims arising from assignments from plan

---

[26] 29 U.S.C. § 1332(a)(3)(B)(ii).
[27] *Mayo v. Benthall*, No. 3:97cv231-B-A, 1998 WL 433942, at *3-4 (N.D. Miss. June 12, 1998).

10

beneficiaries. During the hearing, Defendants' counsel advised that Defendants "will never bring TPPA claims based on an assignment" received from patients. The Court characterized that statement as "a stipulation binding on Mr. Watts' clients," and after a correction of word choices, counsel for Aetna agreed that the statement was sufficient to constitute a stipulation by which Defendants have waived or withdrawn any claims arising from beneficiaries' assignments.[28]

To the extent, however, that the stipulation might not satisfy the Court's inquiry, other documents readily demonstrate that the providers make no claims against Aetna that depend upon an assignment from patients. In a January 21, 2014 letter to Aetna's counsel, the providers advised that "Each of the TPPA claims filed by [THR] against Aetna were filed pursuant to its rights under the TPPA by virtue of its contractual privity with Aetna," and further averred that THR "has made, makes, and will make no claims in this lawsuit by virtue of [their] contractual right to step in the shoes of individual patients, who contractually provide [THR] with an assignment of their rights against certain plans."[29] Judge McBryde's February 12, 2014 order likewise acknowledged that THR had, in response to a contrary claim by Aetna, maintained "that it is not bringing this suit as an assignee of any claim, but, instead, is bringing this suit for recovery of damages under the Act because of the direct contractual relationship between plaintiff and defendant." The same proof exists as to Methodist.

---

[28] Tr. of 12/11/2014 Hrg. at 8.
[29] January 21, 2014 letter to J. Shely at 4

Since there are no claims made in this litigation deriving from assignments from patients – and since any potential claims based upon assignments have been waived by the stipulation of counsel – no Aetna entity has standing to seek declaratory relief as to such claims.[30]

## V. Conclusion and Prayer

Based on the foregoing, Defendants Methodist Hospitals of Dallas and Texas Health Resources pray that the Court grant their Joint Rule 12(b)(7) Motion to Dismiss. Defendants pray for such other and further relief to which they may be justly entitled.

Dated: December 18, 2014

                              Respectfully submitted,

By: /s/ Mikal C. Watts
Texas Bar No. 20981820
Fed. ID No. 12419
mcwatts@wattsguerra.com
WATTS GUERRA LLP
Four Dominion Drive,
Bldg. Three, Suite 100
San Antonio, Texas 78257
(210) 447-0500
(210) 447-0501 (fax)

ATTORNEY-IN-CHARGE FOR
DEFENDANTS METHODIST
HOSPITALS OF DALLAS AND
TEXAS HEALTH RESOURCES

---

[30] 28 U.S.C. § 2201(a)(permitting federal court to determine the rights and other legal relations of parties in a case of actual controversy); *Collin County, Tex. v. Homeowner's Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990)("only parties with legal interests threatened in an actual controversy have standing to sue under the Declaratory Judgment Act."); *EnviroGLAS Prods., Inc. v. EnviroGLAS Prods., LLC*, 705 F.Supp.2d 560, 566 (N.D. Tex. 2010)("Declaratory judgments 'still must be limited to the resolution of an 'actual controversy.'").

Of counsel: LAW OFFICE OF JOSEPH V. GIBSON
Joseph V. Gibson, IV
Texas Bar No. 24007236
jgibson@jvglaw.com
17618 Wagner Point Court
Tomball, Texas 77377
(281) 370-1810
(281) 370-1811 (fax)

FRANCIS, RIDGELL & TOTUSEK, LLP
Joe Don Ridgell
Texas Bar No. 24046716
jdridgell@fotllp.com
Bobby D. Amick
Texas Bar No. 24059377
bamick@fotllp.com
500 N. Akard, Suite 1830
Dallas, Texas 75201
(214) 740-4250
(214) 740-4266 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served electronically on this 18th day of December, 2014 to:

ATTORNEYS FOR PLAINTIFF

| | | |
|---|---|---|
| John B. Shely | - | jshely@andrewskurth.com |
| Kendall M. Gray | - | KendallGray@andrewskurth.com |
| Dimitri Zgourides | - | DZgourides@andrewskurth.com |
| Mitchell A. Reid | - | MitchReid@andrewskurth.com |
| Mark A. Shoffner | - | markshoffner@andrewskurth.com |

By: /s/ Mikal C. Watts
ATTORNEY-IN-CHARGE FOR
DEFENDANTS METHODIST
HOSPITALS OF DALLAS AND
TEXAS HEALTH RESOURCES