**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| AETNA LIFE INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | 3:14-cv-347-M |
| METHODIST HOSPITALS OF DALLAS | § | |
| and TEXAS HEALTH RESOURCES, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants' Motion to Dismiss under Rule 12(b)(7) [Docket #14], Plaintiff's Motion for Summary Judgment [Docket #17], and Defendants' Cross-Motion for Summary Judgment [Docket #42]. For the reasons stated below, Defendants' Motion to Dismiss under Rule 12(b)(7) is **DENIED**; Plaintiff's Motion for Summary Judgment is **DENIED**; and Defendants' Cross-Motion for Summary Judgment is **GRANTED**.

**I.   Background**

The Court is asked to decide whether ERISA preempts the Texas Prompt Payment Act's mandatory payment deadlines, insofar as the deadlines apply to third-party administrators of self-funded health insurance plans. The Court finds that ERISA does not preempt the TPPA's application in the narrow circumstances presented in this case.

Aetna Health, Inc. ("AHI"), a health maintenance organization, contracted with the Defendants, Methodist Hospital and Texas Health Resources (collectively called the "Providers"), by which the Providers agreed to provide benefits to the plan beneficiaries of AHI and its affiliates.

1

AHI, expressly on behalf of itself and its affiliates, was obligated to reimburse the Providers for covered claims within 45 days of AHI's receipt of a clean claim,[1] or such shorter time as required by applicable law or regulation. Plaintiff Aetna Life Insurance Company ("ALIC") is an affiliate of AHI that provides claims administration services for self-funded employee benefit plans. In a traditional insurance plan, a corporation enters "into a contract with an insurance company for a fixed cost to provide health benefits to [the company's] employees." *America's Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1323 (11th Cir. 2014) (providing a helpful explanation of the difference between "insured" health benefit plans and "self-funded" or "self-insured" plans). In contrast, a company providing "a self-insured" benefit plan pays health claims from its own funds, thereby assuming the financial risk associated with paying its employees' health care costs. Companies that self-fund "often contract with third-party administrators . . . to perform certain administrative functions for the employer and each plan." *Id.* ALIC is such a third-party administrator.

In September of 2013, the Providers each sent AHI a "Pre-Arbitration Demand" letter, alleging that AHI owed them more than ten million dollars each in late-payment penalties. The Providers alleged that AHI was obligated to abide by the claim payment deadlines set forth in the Texas Health Maintenance and Organization Act and Texas Insurance Code Chapter 1301, which

---

[1] ALIC's Provider Agreement with Methodist Hospitals defines a clean claim as "A complete and accurate claim submitted for a Covered Service . . . that has been completed in accordance with" the state standards in force under the Texas Administrative Code, in a particular format, and submitted within the time frame required. [ALIC's MSJ, Ex. A-1, p.13-14]. ALIC's Provider Agreement with THR defines a clean claim as "a claim that contains the information that is required by applicable Texas law and regulations adopted by the Commissioner of Insurance and is submitted consistent with Aetna's established processing procedures to the extent Aetna established the information and processing procedure requirements consistent with applicable Texas law and regulations." [ALIC's MSJ, Ex. A-2, p. 4]. The definition of a clean claim is not in dispute in this case.

together comprise the Texas Prompt Payment Act ("TPPA"). [Docket #5, p. 6; Ex. E-G]. The

TPPA dictates that the maximum time for an "insurer" to pay certain claims is thirty to forty-five

days, depending on the claim format.[2] The letters stated that the Providers would initiate arbitration

proceedings if AHI did not pay the penalties under the TPPA. ALIC then filed this declaratory

judgment action, in federal district court in Houston, naming Methodist Hospitals, and later adding

THR. The case was transferred to this Court. [Docket #29]. Around the same time that ALIC sued

the Providers, the Providers filed their own lawsuits in state court in Tarrant County, Texas,

claiming TPPA penalties from AHI. Although those suits were removed, they were then remanded

to state court for lack of federal subject matter jurisdiction.

ALIC asks this Court to declare that "(1) the Texas Prompt Pay Statute, by its terms, does

not apply to self-funded plans, which do not involve the insurance relationship that is required

under the Statute, or (2) if the Statute does apply to self-funded plans, it is preempted by ERISA."

[Docket #17, at 9].  The Providers filed a motion for this Court to dismiss or abstain. This Court

decided to abstain from determining whether or not the TPPA applies to self-funded plans, because

one of the state district courts presiding over the related proceedings was about to rule on that

precise issue. On October 3, 2014, that state court issued its Order, finding that "the Texas Prompt

---

[2] "Except as provided by Sections 1301.104 and 1301.1054, not later than the 45th day after the date an insurer receives a clean claim from a preferred provider in a nonelectronic format or the 30th day after the date an insurer receives a clean claim from a preferred provider that is electronically submitted, the insurer shall make a determination of whether the claim is payable and:
1) if the insurer determines the entire claim is payable, pay the total amount of the claim in accordance with the contract between the preferred provider and the insurer;
2) if the insurer determines a portion of the claim is payable, pay the portion of the claim that is not in dispute and notify the preferred provider in writing why the remaining portion of the claim will not be paid; or
if the insurer determines that the claim is not payable, notify the preferred provider in writing why the claim will not be paid." Tex. Ins. Code Ann. § 1301.103.

Pay Act applies to Aetna with respect to claims administered by Aetna for self-funded plans." This Court defers to that non-final interpretation of state law. [3] Therefore, the only remaining question for this Court to decide on the motions pending before it is whether ERISA preempts the TPPA.

## II.     Jurisdiction and the Providers' 12(b)(7) Motion to Dismiss

Although ALIC initiated this suit under the federal Declaratory Judgment Act ("DJA"), 28 U.S.C § 2201, it must still show that this Court has federal question or diversity jurisdiction, since the DJA does not create subject matter jurisdiction. *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 666 F.3d 932, 938 (5th Cir. 2012).

This Court has diversity jurisdiction over cases where the matter in controversy exceeds $75,000 and there is complete diversity of citizenship. 28 U.S.C. § 1332. "The amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the extent of the injury to be prevented." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1252-53 (5th Cir. 1998). ALIC notes that "Defendants are demanding millions of dollars from Aetna under the Texas Prompt Pay Act," and the Defendants do not contest that the amount in controversy exceeds $75,000. The named parties are diverse, as ALIC has its principal place of business in Connecticut, and the Defendants are Texas corporations with their principal place of business in Texas. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003). The Court has considered the facts on the record and concludes that the parties are completely diverse and the amount in controversy exceeds $75,000. Because diversity jurisdiction exists, the Court need not determine if it would also have federal question jurisdiction under 28 U.S.C. § 1331.

---

[3] Although the Aetna entity in state court (Aetna Health Insurance, Inc.) is different from the Aetna entity in this case (Aetna Life Insurance Co.), the parties agreed at the motion hearing on September 9, 2014, that the state court's Order binds both Aetna entities, subject to appeal on the merits. [Hr'g Tr. p. 30-31, 31-36 Sep. 9, 2014]

Providers challenge the Court's diversity jurisdiction in their motion to dismiss under Rule 12(b)(7), in which they argue that AHI is a necessary party that would defeat diversity jurisdiction if joined to this action. Rule 12(b)(7) of the Federal Rules of Civil Procedure allows dismissal of a complaint for failure to join a party under Rule 19. Rule 19 provides that all parties whose presence is required to fairly and completely resolve the dispute must be joined. If those parties cannot be joined, the lawsuit can be dismissed. *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003).  The Court must first determine whether, under Rule 19(a), a person should be joined to the lawsuit, and if the answer is yes, that person will be joined, unless the joinder would destroy the Court's jurisdiction, in which case the Court must determine "whether to press forward without the person or to dismiss the litigation." *Id.* at 439.

For an entity to claim late-payment penalties from an "insurer" under the TPPA, the entity must be in privity of contract with the insurer. *Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 654 (Tex. 2013) (finding that an HMO was not liable for nonpayment of medical services provided to patients under contracts the hospitals had with the HMO's network, because no privity of contract existed). The Providers argue that they are in privity of contract with nonparty AHI, not with ALIC; and that therefore, under *Christus*, AHI is an indispensable party. The Providers argue they have no claims against ALIC, and there is no controversy between the Providers and ALIC that supports a declaratory judgment action. ALIC responds that it has privity with the Providers, since AHI signed the Provider Agreements on behalf of itself and its affiliates. ALIC urges that since its lawsuit seeks only a determination as to whether the TPPA applies to third-party administrators of self-funded plans, and ALIC is the Aetna entity which administers self-funded plans, it has standing to proceed on its own.

The Provider Agreement between Methodist Hospital and AHI states that that the managed care agreement is entered into by Aetna Health, Inc., "on behalf of itself and its Affiliates (as defined below.)" [ALIC's MSJ, Ex. A-1, p. 2]. The Provider Agreement between THR and AHI was entered into by Aetna Health Inc., "on behalf of itself and its *applicable* Affiliates." [ALIC's MSJ, Ex. A-2, p.4] (emphasis added). In each Agreement, Affiliate is defined as "any corporation, partnership or other legal entity (including any Plan) directly or indirectly owned or controlled by, or which owns and controls, or which is under common ownership or control" by or with Aetna Health, Inc.  [ALIC's MSJ, Ex. A-1, p. 13; Ex. A-2, p.3].

Under the terms of the Provider Agreements, issues of contract interpretation are controlled by Texas law. [ALIC's MSJ, Ex. A-1, p. 11; Ex. A-2, p.27]. Texas law gives "contract terms their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.,* 294 S.W.3d 164, 168 (Tex. 2009). An unambiguous contract is construed by the Court as a matter of law. The Court finds that the Agreement between AHI and Methodist is unambiguous, and that as a matter of law, ALIC, as an affiliate of AHI, is in privity of contract with Methodist. Although AHI's contract with THR refers to "applicable Affiliates," the Court finds that the plain meaning of "applicable" clearly encompasses ALIC, since ALIC administers the THR plans.

Having considered the Provider Agreements, [ALIC's MSJ, Ex. A-1; Ex. A-2] the Court finds that the Providers are in privity of contract with ALIC, that they have standing to sue ALIC under *Christus*, and that ALIC has standing to seek a declaratory judgment as to them. *See Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 654 (Tex. 2013). The Court thus denies the Providers' motion to dismiss under Rule 12(b)(7), finding that it has diversity jurisdiction over the case.

### III.    Proceeding under the Declaratory Judgment Act

In deciding a declaratory judgment action, a district court must first determine "(1) whether the action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003); *Orix Credit Alliance, Inc., v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).

As the Fifth Circuit has stated, "a declaratory judgment action, like any other action, must be ripe in order to be justiciable." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000). Such an action is ripe for adjudication only where an actual controversy exists, or where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Id.* (quoting *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir.1986)). The actual controversy here arises from the Providers' demand letters claiming substantial late-payment penalties under the TPPA, which insisted AHI pay within a certain time frame or be subject to arbitration proceedings under the Provider Agreements. "The threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based." *Id.* at 897. Although the demand letters are directed to AHI, the claims for late payment penalties against third party administrators of self-funded plans could be assessed against ALIC, since it is ALIC that acts as the third party administrator of self-funded plans. The Court finds that there is a genuine controversy here, and that this case is justiciable. *See generally NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994).

Second, the Court must decide whether it has the authority to grant declaratory relief. The Fifth Circuit has found that "when a state lawsuit is pending, more often than not, issuing a declaratory judgment will be tantamount to issuing an injunction—providing the declaratory plaintiff an end run around the requirements of the Anti–Injunction Act." *Travelers Ins. Co. v.*

*Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993). Therefore, "as a general rule, the district court may not consider the merits of a declaratory judgment action when (1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, (2) the state case involves the same issues as those involved in the federal case, *and* (3) the district court is prohibited from enjoining the state proceedings under the Anti–Injunction Act." *Id.* (emphasis in original). Here, the first element of the three-part test for mandatory abstention is not met; although at least one related case is pending in state court, it was filed by the Providers *after* ALIC filed this suit. Therefore, abstention is not mandatory, and the Court need not consider the remaining two elements. *See Ford v. Monsour*, No. CIV.A. 11-1232, 2011 WL 4808173, at *3 (W.D. La. Oct. 11, 2011) ("Because [the declaratory judgment plaintiff] filed the instant declaratory judgment action before [the declaratory judgment defendant] filed his suit in state court, mandatory abstention is not warranted."); *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993).

Finally, the Court must decide whether, in its discretion, it should allow this action to proceed. *Travelers*, 996 F.2d at 778 (5th Cir. 1993) ("It is now well-settled in the Fifth Circuit that a district court has discretion over whether to decide or dismiss a declaratory judgment action."). Although this Court's discretion is broad, it is not "unfettered." *Id.* Accordingly, the Fifth Circuit has identified "seven nonexclusive factors for a district court to consider in deciding whether to decide or dismiss a declaratory action." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 388 (5th Cir. 2003). The factors are: "(1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in

8

time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. *Id.*

Two of the *Sherwin-Williams* factors are of paramount significance in this case: the first and the sixth. As to the first, there are two parallel proceedings in state court that involve AHI, ALIC's affiliate, and the Defendants in this case. The pending state court proceedings are not directly parallel to this action. As for the sixth factor, this case was filed in federal court in Houston in November 2013. This Court has conducted two full motion hearings, held a phone conference on the record, and received substantial briefing, all of which well educate this Court on the issues. The Court concludes that its deferral to the state court on the issue of the TPPA's applicability to self-insured plans is the extent to which the Court should concern itself about improperly interfering with the state court proceedings. Judicial economy is not disserved by the Court reaching the preemption issue. Factors two and six do not cause the Court to conclude it should not proceed.

The other *Sherwin-Williams* factors similarly do not dissuade the Court from ruling. The second factor, which asks whether the lawsuit was filed in anticipation of a lawsuit from the defendant, weights slightly in favor of this Court declining to hear this declaratory judgment action, because ALIC filed this lawsuit after the Providers articulated their demands. Many of the issues relating to the fairness of the forum (factors three, four, and five) were resolved when this case was transferred from federal court in Houston to this Court under *In Re Volkswagen II*, 545 F.3d 304, 315 (5th Cir. 2008). The seventh factor does not apply to this case because this case does

not involve construction of a state court decree. The Court concludes that the relevant *Sherwin-Williams* factors do not weigh in favor of this Court declining to decide the declaratory judgment action. Therefore, this Court will exercise its discretion and hear the suit. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.")

## IV.   The Cross-Motions for Summary Judgment

The Court now turns to the question of whether ERISA preempts the TPPA's prompt payment deadlines, raised by both parties' Motions for Summary Judgment.

### A.  Legal Standard

The purpose of ERISA is to provide uniform regulatory requirements for employee benefit plans, including remedies, sanctions, and access to the federal courts, to protect the interests of participants and their beneficiaries. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)). One of ERISA's primary means of achieving this purpose is its preemptive scope, which is "intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Id.* (quoting *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, (1981)). Courts have attempted to name and define the various types of ERISA preemption, which has contributed to the complexity of ERISA litigation. This Court will not further muddy the waters by attempting to find consistency in the case law where such does not exist. Courts have found that ERISA preempts state laws under the same preemption principles applied to other federal statutes. *See Boggs v. Boggs*, 520 U.S. 833, 844 (1997). Some federal laws, however, have their own "express preemption" language—language in the statute that explicitly states that it will

preempt state law under defined circumstances. ERISA contains broad express preemption language in Section 514(a), codified as 29 § U.S.C. 1144(a), which states that "the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Id.* 29 U.S.C. 1144(a). As a result, a court analyzing the preemptive effect of ERISA must analyze traditional federal preemption principles and this express preemption language in Section 514(a). A law preempted under Section 514(a) might also be preempted under traditional federal preemption principles. *See Egelhoff v. Egelhoff ex rel. Breiner,* 532 U.S. 141, 148 (2001) (Scalia, J., concurring) (commenting that a law that directly contradicts ERISA for purposes of conflict preemption also assuredly triggers the express preemption provision of Section 514(a)).

ALIC claims that the Providers may not seek prompt payment penalties under the TPPA because the TPPA "relates to" ERISA plans, and thus is expressly preempted by Section 514(a). To determine whether Section 514(a) preempts a state law, courts follow a three-step inquiry. First, a court must determine whether ERISA "relates to any employee benefit plan." 29 U.S.C. § 1144(a). Second, a court must determine whether the "savings clause" of the ERISA preemption provision applies, because this clause exempts from preemption any state law that "regulates insurance." ERISA § 514(b)(2)(A). However, even if the savings clause applies, the "deemer clause" of ERISA provides yet another exception: no employee benefit plan shall be deemed to be an insurance company for purposes of any state law "purporting to regulate insurance." *Pilot Life Ins. Co v. Dedeaux*, 481 U.S. 41, 45 (1987).

## B. Analysis

This case turns on the first element of the Section 514(a) analysis—whether the TPPA "relates to" an employee benefit plan. The Supreme Court has held that "a state law relates to an

ERISA plan 'if it has a connection with or reference to such a plan.'" *Egelhoff*, 532 U.S. at 147

(quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97 (1983)).  The Supreme Court has cautioned

against an "'uncritical literalism' that would make preemption turn on 'infinite connections.'" *Id.*

(quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514

U.S. 645, 656 (1995).  Therefore, courts have developed limiting principles to ensure that Section

514(a) does not "reach to the farthest stretch of indeterminacy." *New York State Conference of*

*Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995). The Fifth Circuit

has adopted a two-pronged test to give meaning to the phrase "relates to." *Bank of Louisiana v.*

*Aetna U.S. Healthcare Inc.,* 468 F.3d 237, 242 (5th Cir. 2006). To show that a law "relates to"

employee benefit plans, the party claiming preemption must show that: (1) the claim "addresses

an area of exclusive federal concern, such as the right to receive benefits under the terms of the

plan; and (2) the claim directly affects the relationship among traditional ERISA entities—the

employer, the plan and its fiduciaries, and the participants and beneficiaries." *Bank of Louisiana*,

468 F.3d at 242.

### 1.  Uniform Plan Regulation as an ERISA Goal

ALIC's primary argument that ERISA Section 514(a) preempts the TPPA is that payment

deadlines imposed on third-party administrators will subject third-party administrators like ALIC

to different regulations in different states, undermining ERISA's primary goal of uniformly

regulating plan administration. Indeed, uniform regulation of ERISA plans among the fifty states

is a primary goal of ERISA. *Egelhoff,* 532 U.S. at 148 (2001). In *Egelhoff*, the Supreme Court held

that Section 514(a) of ERISA expressly preempted a Washington statute that automatically

revoked the designation of a spouse as a beneficiary upon divorce. 532 U.S. at 147-148. The

Supreme Court stressed that one of the "principal goals of ERISA is to enable employers 'to

establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.'" *Id.* (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)). But if "plans are subject to different legal obligations in different states," then "uniformity is impossible." *Id.* The Washington statute "pose[d] precisely that threat" of non-uniformity, because plan administrators could no longer make payments by relying upon the plan documents; instead, they were required to "familiarize themselves with state statutes so that they [could] determine whether a named beneficiary's status has been 'revoked' by operation of law." *Id.* at 149. In finding preemption, the Court noted that "[r]equiring ERISA administrators to master the relevant laws of 50 States and to contend with litigation would undermine the congressional goal of 'minimiz[ing] the administrative and financial burden[s]' on plan administrators—burdens ultimately borne by the beneficiaries." *Id.* at 149-50 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)). *See also Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990) ("ERISA's comprehensive preemption of state law affords employers the advantages of a uniform set of regulations governing plan fiduciary responsibilities and governing procedures for processing claims and paying benefits.").

The Eleventh Circuit in *America's Health Ins. Plans v. Hudgens* recently applied *Egelhoff* to hold that Section 514 of ERISA expressly preempted Georgia's prompt payment statute, which applied to third party administrators of self-funded plans. *America's Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1333 (11th Cir. 2014). In deciding whether the Georgia law "related to" an ERISA plan, the court explained that it "look[s] both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans." *Id.* at 1331 (quoting *Egelhoff*, 532 U.S. at 146). In analyzing whether the state law conflicted with the objectives of ERISA, the Eleventh Circuit

found that the Georgia prompt payment requirements "fly in the face of one of ERISA's main goals: to allow employers 'to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.'" *Hudgens*, 742 F.3d at 1330-1331. Specifically, "employers offering self-funded health benefit plans would be faced with different timeliness obligations in different states, thereby frustrating Congress's intent." *Id.* at 1331.

As to the second prong, whether the state law has an impermissible effect on ERISA plans, Georgia tried to defend the prompt payment statute by arguing that because the law's focus was on regulation of non-ERISA entities, the law did not impermissibly affect ERISA plans. The court found that the argument about traditional ERISA entities "h[eld] no water, as we have held that ERISA's overarching purpose of uniform plan regulation of plan benefits overshadows this distinction." *Hudgens*, 742 F.3d at 1331. Even though the law did not directly regulate ERISA plans, the Eleventh Circuit found it impacted them by undermining uniform plan administration. The court thus found that the Georgia law related to ERISA plans, and that the law was expressly preempted. *Id.* at 1333-1334.

The Providers argue that this Court should not follow *Hudgens* because the Eleventh Circuit did not strictly apply the second step of the analysis required by Fifth Circuit precedent— whether the statute directly affects the relationship between traditional ERISA entities. The Providers contend that regulating the timing of payment of uncontested claims between two entities on the fringe of an ERISA plan (i.e., a third party administrator and a Provider), does not affect the relationship between traditional ERISA entities—the plan and the beneficiary—and thus is not preempted. In support of their argument, the Providers cite to a number of "complete preemption" cases, the analysis in which the Court views as applicable in this case.

### 2.  The "Relates to" Prong in the Complete and Express Preemption Contexts

In addition to arguing that the *Hudgens* case should be considered unpersuasive based on Fifth Circuit precedent, the Providers cite cases in which courts have considered whether claims for late payments under prompt payment statutes are "completely preempted" under ERISA. Generally, the doctrine of complete preemption applies if Congress "so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). In the ERISA context, complete preemption applies when a party asserts "state law claims seeking relief within the scope of ERISA § 502(a)(1)(B)." *Baylor*, 331 F.Supp.2d at 506; 29 U.S.C. § 1132(a)(1)(B). Because Section 502(a) "sets forth a comprehensive civil enforcement scheme that would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain [the] remedies under state law that Congress rejected in ERISA," a court that detects such a state law claim must recharacterize it as a federal claim. *E. I. DuPont de Nemours & Co v. Sawyer*, 517 F.3d 785, 797 (5th Cir. 2008) (internal citations omitted). A state court defendant sued under such state law claims may remove the case to federal court. *Baylor*, 331 F.Supp.2d at 506; 29 U.S.C. § 1132(a)(1)(B). Any state cause of action that "duplicates, supplements, or supplants the ERISA civil enforcement remedy" is subject to complete preemption. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).

The Fifth Circuit has found that claims against third-party administrators of self-funded plans for penalties under prompt payment statutes are not completely preempted if the party bringing the claim is neither a beneficiary nor one standing in the shoes of a beneficiary. For example, in *Lone Star OB/GYN Associates v. Aetna Health, Inc.,* 579 F.3d 525 (5th Cir. 2009), the Fifth Circuit found that claims under the TPPA were not completely preempted by ERISA Section

502(a). *Id.* at 529. There, AHI was a third party administrator over various ERISA plans, including those of companies like Boeing, Hyatt, and UPS. Lone Star OB/GYN Associates was a healthcare provider under contract with AHI. Lone Star sued AHI in state court, alleging that AHI did not timely pay claims, in violation of the TPPA. AHI removed the case to federal court, alleging that the TPPA claims were completely preempted because they fell under Section 502(a)(1)(B) of ERISA, which provides for a civil action "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Lone Star argued that its claims did not arise from an ERISA plan, but rather from the contract between Lone Star and AHI. The Court found that the contract created an independent legal duty running from AHI to Lone Star, that Lone Star's claims did not rest on the ERISA plan, and that therefore, there was not complete preemption under Section 502.

In *Baylor University Medical Center v. Arkansas Blue Cross Blue Shield*, this Court considered a similar question. 331 F.Supp.2d 502 (N.D. Tex. 2004) (Fish, J.). Baylor, a health care provider, sued Arkansas Blue Cross Blue Shield ("BCBS"), an insurer, for breaching its contractual duty to pay Baylor for services Baylor provided to BCBS beneficiaries, and for prompt payment penalties under the TPPA because the claims were not paid within 45 days. The court held that neither Baylor's contract claims nor its TPPA claims against BCBS were completely preempted under ERISA, because neither claim was predicated on a state law that relates to ERISA plans. As to the contract claims, the court found that Baylor's contract claims were neither dependent on nor derived from the beneficiaries' rights to recover benefits under their ERISA plan, and "[e]nforcing a contract to provide medical services in exchange for payment for those services is hardly an exclusive area of federal concern." *Id.* at 509. The Court also found that pursuit of the

contractual claims would not modify the relationships between BCBS and its plan beneficiaries, since the dispute was purely about Baylor's contract with BCBS. *Id.* at 509.

Judge Fish applied similar reasoning to analyze whether Baylor's claims for late payment penalties against BCBS under the TPPA were completely preempted. He found that the ERISA plan "provide[d] only factual background for Baylor's statutory claims; the plan is peripheral to the statutory obligation Baylor seeks to enforce in this case, namely, prompt payment of Baylor for services rendered," and that "ERISA does not preempt generally applicable state laws that impact ERISA plans only tenuously, remotely, or peripherally." *Id.* at 511. Judge Fish further reasoned that "plan participants' actual obligations under the terms of their various plans would remain constant and the plans' terms would be unmodified." Therefore, he concluded that Baylor's claims under the TPPA did "not directly affect the relationship between traditional ERISA entities." *Id.* at 512. The court also expressed the inappropriateness of "insulat[ing] an insurer from liability against a third-party health care provider seeking to enforce its rights under a state statute that requires prompt payment of claims." *Id.* at 511.

The significance of *Lone Star* and *Baylor* is implicitly recognized in the Eighth Circuit's decision in *Schoedinger v. United Healthcare of Midwest, Inc.*, 557 F.3d 872, 873 (8th Cir. 2009). Schoedinger, a health care provider, sued an insurer under Missouri's prompt payment statute. Schoedinger argued that its claims were not completely preempted because the statute only changed the rate at which the entity had to pay the claims, not the substance or terms of the plan itself, so that the provider's claims were too remote to impact the ERISA plans. The Eighth Circuit rejected that argument, interpreting the statute as authorizing only late-payment claims between ERISA participants and beneficiaries; therefore, the only way Schoedinger could bring claims was if it stood in the shoes of the plan beneficiaries as an assignee of their claims. In *Baylor*, Judge

Fish rested his holding on the fact that Baylor's claims against BCBS arose out of its contract with BCBS, and that ERISA did not restrict the ability of two entities wholly outside ERISA to contract. But in *Schoedinger*, the health care provider stood in the shoes of plan beneficiaries, as a result of the beneficiaries assigning their plan benefits to Schoedinger. Reasoning that, in that context, "the impact of the [prompt payment statute] is not 'remote'", the *Schoedinger* court found that the claims under the prompt payment act were completely preempted. *Id.* at 875. Here, there are no such assignments. The Providers' claims arise from Provider Agreements.

Finally, the Supreme Court in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 212 (2004) clarified that an important part of the analysis in complete preemption cases, for purposes of determining whether the legal duties between the parties arise from independent obligations or from ERISA, was whether a decision on the claims required interpretation of the ERISA plans. *Davila*, 542 U.S. at 213. In that case, beneficiaries sued their HMOs in state court, under state law, for their refusal to cover certain medical services. The Supreme Court held that their state law claims were completely preempted under Section 502(a)(2) of ERISA, because it was necessary for the court to interpret the terms of the ERISA plan to decide the lawsuit. *Id.* ("Petitioners' potential liability under the [state laws] in these cases, then, derives entirely from the particular rights and obligations established by the benefit plans. So . . . [the] causes of action [under state law] are not entirely independent of the federally regulated contract itself.").

### 3.  Application to the Texas Prompt Payment Act

Here, this Court must determine whether the TPPA, insofar as it permits Providers to claim penalties from third-party administrators of self-funded plans, "relates to" ERISA plans because it (1) addresses an area of exclusive federal concern; and (2) directly affects the relationship among traditional ERISA entities—the employer, the plan, and its fiduciaries, and is thus preempted by

Section 514(a). *Bank of Louisiana v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 242 (5th Cir. 2006).

Turning to the first prong of the relates to analysis, this Court must discern whether the law "addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan." *Bank of Louisiana*, 468 F.3d at 242. ALIC argues that the TPPA imposes penalties specific to Texas, which undermines ERISA's goal of achieving uniform regulation of ERISA plans, and that, therefore, the TPPA touches upon an area of exclusive federal concern. However, the goal of uniformity surely does not prohibit all regulation of entities related to ERISA plans. In *Egelhoff*, ERISA's goal of plan uniformity was thwarted when the Washington statute actually engrafted terms onto ERISA plans, requiring administrators of those plans to be prepared to interpret ERISA plans differently in each state. Here, the Providers have demanded late-payment penalties arising from the Provider Agreements with ALIC, a third-party administrator of self-funded plans, leaving the ERISA plans untouched. The only impact on ERISA plans asserted by ALIC is the increased cost it will incur for administering ERISA plans as a result of the imposition of prompt payment penalties, which the Court finds speculative at best. Although uniformity is important to ERISA, it does not preclude all regulation of related entities, especially when those entities have contracted between themselves.

The second prong of the relates to analysis, which asks whether the law "directly affects the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries," brings home the distinction between this case and *Hudgens*. Importantly, the parties in this case are not all traditional ERISA entities, nor do the Providers "stand in the shoes" of ERISA plan beneficiaries. The Providers' demands arise by virtue of their contractual privity with ALIC under the Provider Agreements, not because any ERISA plan

beneficiaries have assigned their rights to the Providers. *See Baylor*, 331 F.Supp.2d at 508 ("[A]bsent status as an assignee, health care providers are not traditional ERISA entities"); *Memorial Hospital*, 904 F.2d at 249.

Furthermore, the Providers are not making demands for payment of benefits under ERISA plans. No coverage determination is implicated. *See N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 315 (S.D. Tex. 2011) ("Thus, it was unnecessary for the [Fifth Circuit in *Lone Star*] to construe the ERISA plan language in order to resolve the plaintiff's claims . . . It is not clear that the court's conclusion would apply to the situation presented here, where the legal duty to pay the insurance claims in the first instance arises from the plan itself."). Accordingly, except for a speculative concern that the TPPA penalties could raise the costs of ERISA plan administration, the TPPA's imposition of payment penalties in this context has no effect on traditional ERISA entities. As for the cost issue, the Supreme Court has stated, "[a]ny state . . . law[] that increase[s] the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is preempted by [ERISA]." *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814- 816 (1997). The only merits question here is when ALIC was obligated to pay the Providers. The prompt payment deadlines "simply do not intrude into federal matters respecting the duties and standards of conduct for an ERISA plan administrator." *E. I. DuPont de Nemours & Co v. Sawyer*, 517 F.3d 785, 800 (5th Cir. 2008) (internal citations omitted). The holding in *Egelhoff* illuminates this distinction. *Egelhoff* found that the state law bound ERISA plan administrators to a particular choice of rules for determining beneficiary status. 532 U.S. at 147. In contrast, the TPPA does not touch any aspect of coverage or traditional ERISA entities in a material way.

ERISA does not go so far as to eliminate the ability of parties on the periphery of ERISA plans to contract with one another, nor the right of state legislatures to pass laws that impact those contracts. *See Baylor*, 331 F.Supp.2d at 511 (Congress's wide preemptive scope was not intended to "insulate an insurer from liability against a third-party health care provider seeking to enforce its rights" under a contract). The potential increase in costs passed onto beneficiaries that ALIC argues will occur is insufficient to serve as a basis for preemption. The ruling ALIC asks this Court to make—to essentially hold unconstitutional a state statute as it applies to these parties—is an extraordinary one. *See Travelers Ins. Co.*, 514 U.S. at 655 ("the historic police powers of the States were not to be superseded by [ERISA] unless that was the clear and manifest purpose of Congress."). This Court declines to find express preemption under ERISA Section 514(a).

ALIC's express preemption defense to the Providers' payment claims fails on the first step of the ERISA preemption analysis: the TPPA, insofar as it applies to third-party administrators of self-funded ERISA plans, does not sufficiently relate to ERISA plans in the way contemplated by ERISA and Fifth Circuit case law to support preemption. Neither do the persuasive complete preemption cases discussed above support a finding of preemption here.

## V.     Conflict Preemption

Although the parties have spilled little ink on this subject in their cross-motions for summary judgment, the Court has considered whether the TPPA is conflict preempted by a Code of Federal Regulations provision cited by ERISA, 29 C.F.R. 2560.503.1. That provision, "Claims Procedure," provides "minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries (hereinafter referred to as claimants)." 29 C.F.R 2560.503.1 (2013). While this provision sets forth timing requirements for claims, it does not apply to the Providers' claims under the TPPA, because the Providers are not beneficiaries or

participants, nor are they standing in their shoes by virtue of assignment. Since the Providers assert their claims by virtue of the Provider Agreements, this provision does not apply, and conflict preemption is inapplicable.

## VI.    Conclusion

This Court has diversity jurisdiction to declare whether preemption is a valid federal defense to the Providers' claims under state law. Finding that there are no indispensable parties absent in this litigation, the Court **DENIES** the Providers' Motion to Dismiss under Rule 12(b)(7) [Docket #14]. Reaching the merits of the declaratory judgment action, the Court finds that the Providers' claims under the TPPA are not preempted by ERISA, and therefore **GRANTS** the Providers' Cross-Motion for Summary Judgment [Docket #42]. ALIC's Motion for Summary Judgment [Docket #17] is **DENIED**. A separate judgment will issue.

**SO ORDERED**.

March 4, 2015.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

22